## UNITED STATES v. MISSOURI–KANSAS–TEXAS R. CO. et al.

### No. 13719.

United States Court of Appeals
Fifth Circuit.

March 4, 1952.

778

Hubert H. Margolies, Atty. Dept. of Justice, Washington, D. C., A. W. Christian, Asst. U. S. Atty., Frank B. Potter, U. S. Atty., Ft. Worth, Tex., for appellant.

Wm. R. McDowell, O. O. Touchstone, G. H. Penland, M. E. Clinton and Robert Thompson, all of Dallas, Tex., for appellees.

Before BORAH, RUSSELL, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

The question here is one of freight rate application. More specifically, whether under the tariffs of the southwestern railroads the applicable carload rating on airplane, tank and marine internal combustion engines is 40% of first-class or 35% of first-class.

The tariffs involved are Southwestern Lines Tariff No. 252A and No. 173-O. For present purposes these tariffs may be regarded as identical in that they each contain two exceptions to the class rating (45% of first-class) which is provided on internal combustion engines in the Western classification. We shall accordingly treat them as one and conveniently refer only to the provisions of Tariff No. 252A. One exception, Item 130, provides a rating of 40% of first-class on "Agricultural Implements and other Articles." Under this general heading is a list of "Articles referred to," which includes "Engines, steam or internal combustion, N. O. I. B. N." (not otherwise indexed by name). This is the rate which the carriers charged and which the district court held was applicable to the shipments. The other exception, Item 180, is under the heading "Automobile Parts, viz." Thereunder and in connection therewith appears Item 190 which provides a rating of 35% of first-class on "Automobile Parts named in Items 195 or 200." In Item 200 is found a "List of Automobile Parts referred to in Item 190," which includes "Engines, internal combustion, including fuel tanks." The government contends that the shipments herein were entitled to this 35% rate.

There is no contention on the part of the government that these shipments were automobile parts. On the contrary the uncontroverted evidence shows that the shipments consisted of airplane, tank, and boat internal combustion engines. The carriers billed the government agency for these shipments on the basis of the exception rating of 40% of first-class and in due course were paid. Thereafter, the government determined that there had been an overpayment on the shipments for the reason that the exception rating of 35% of first-class published on "Automobile Parts, viz:" was applicable and to recoup the amounts due it deducted from amounts subsequently found due the carriers on other and different shipments the excess over 35%. Challenging the arbitrary and unwarranted action on the part of the Government, the carriers brought these six actions under the Tucker Act [1] to recover such deductions. The cases were consolidated in the court below and tried together. The court, in holding that the 40% rate applied, found no inconsistencies in the tariff regulations and no uncertainty about what was shipped, and rendered judgment in favor of the carriers in the amount sued for. This appeal followed.

The construction of a printed railroad tariff presents a question of law and does not differ in character from that presented when the construction of any other document is in dispute. The four corners of the instrument must be visualized and all the pertinent provisions considered together, giving effect so far as possible to every word, clause, and sentence therein contained. The construction should be that meaning which the words used might reasonably carry to the shippers to whom they are addressed, and any ambiguity or reasonable doubt as to their meaning must be resolved against the carriers. But claimed ambiguities or doubts as to the meaning of a rate tariff must have a sub-

1. Act of March 3, 1887, as amended, U.S.C. Title 28, §§ 1346, 1402(a), 2401, 2402, 2412, inclusive.

stantial basis in the light of the ordinary meaning of the words used and not a mere arguable basis. Hohenberg v. Louisville & N. R. R. Co., 5 Cir., 46 F.2d 952; Christensen v. Northern Pac. Ry. Co., 8 Cir., 184 F.2d 534; Norvell-Wilder Supply Co. v. Beaumont, Sour Lake & Western Railway Company, 274 ICC 547.

 A reading of the tariff provisions as a whole leaves us firm in the conclusion that no ambiguity whatever exists. The provisions are simple and clear. Item 180 is entitled "Automobile Parts, viz." By the established rule of construction this caption is descriptive of what follows and must be read in connection therewith. Under Item 180, in a position obviously subordinate to the caption, Item 190 is found. It provides a rate of 35% of first-class on "Automobile Parts" named in Item 200. In turn, Item 200 is entitled "List of Automobile Parts referred to in Item 190" and thereunder we find listed "Engines, internal combustion, including fuel tanks." Thus it is obvious that the internal combustion engines referred to in Item 200 are "Automobile Parts." Nothing could be more clear and definite.

The government admits that the shipments did not contain "Automobile Parts" and the facts disclose that the shipments consisted of airplane, tank, and boat internal combustion engines. Accordingly, this exception is not applicable to the shipments in question. It is only by lifting the phrase "Engines, internal combustion" completely out of its context and reading it in isolation that a contrary result may be reached. That may not be done.

Turning now to the exception which the carriers claim is applicable, we find that Item 130 is entitled "Agricultural Implements and other Articles." Immediately thereunder in Section 1 a rate of 40% of first-class is provided on "Articles named in Notes 1 and 2." Note 1, which alone is pertinent, unqualifiedly lists "Engines, Steam or Internal Combustion, N. O. I. B. N." Thus Item 130 contains in the caption the significant words "and other articles" and to the commodity description, "Engines, Steam or Internal Combustion," is added the equally significant phrase "not otherwise indexed by name." These provisions obviously broaden the scope of articles included in Item 130, and they find no counterpart in Items 190 and 200.

The articles shipped come under the broad caption "other articles." They were aircraft, tank, and boat internal combustion engines not otherwise indexed by name. It follows that Item 130 established the only applicable rating on the shipments in question. This is the clear, unambiguous meaning of the words used in the tariff and is alone the intention to which the law gives effect.

The judgment of the District Court was right and it is hereby

Affirmed.