UNION PACIFIC RAILROAD COMPA-
NY, a corporation, Appellant,

v.

ORE-IDA POTATO PRODUCTS, Inc., a
corporation, Appellee.

No. 15582.

United States Court of Appeals
Ninth Circuit.

Jan. 24, 1958.

Rehearing Denied March 27, 1958.

Roy F. Shields, Joseph G. Berkshire, Howard E. Roos, Portland, Or., for appellant.

Martin P. Gallagher, Ontario, Or., for appellee.

Before STEPHENS, Chief Judge, and BARNES and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Union Pacific Railroad Company brought this action to recover asserted undercharges for the transportation of frozen French fried potatoes. The defendant shipper, Ore-Ida Potato Products, Inc., denied that there were undercharges. It also counterclaimed to recover alleged overcharges for other shipments of the same commodity.

The court, which tried the case without a jury, found for defendant on both the complaint and counterclaim. Judgment in the sum of $5,331.24 was entered for Ore-Ida Potato Products, Inc. Union Pacific appeals.

The question for determination is whether the trial court was correct in holding that the carload shipments of this commodity took the rates specified in Item 4715 of the applicable tariff, and

not the higher rates specified in Item 4600 of that tariff.[1]

Item 4715 of the tariff prescribes carload rates on "Vegetables, fresh or green, cold pack (frozen fresh or green vegetables either sweetened or not sweetened), in packages as prescribed in Western Classification (subject to notes 1 and 6)."[2] Item 4600 of the tariff prescribes carload rates on "food cooked, cured, or preserved, frozen NOIBN in containers in boxes."[3]

According to the undisputed evidence, the potatoes, after being hauled from farmers' fields or warehouses, were washed, peeled, sliced, steamed or washed, oil blanched, and then quick-frozen. The water blanching, which preceded the oil blanching, was done at a temperature of 190 degrees F. for a period of one minute plus or minus five seconds. Were it not for the oil blanching which followed, a longer period of water blanching would have been required to inactivate the enzymes The oil blanching consisted of immersing the sliced potatoes in blanching oil at 350 degrees F. for one and a half minutes. Except where institutional users desired the product without color, the cuts of potatoes were partially browned by the oil blanching. One purpose of the blanching was to inactivate enzymes in the raw potato and to stop bacterial decay.

Several other purposes were also served by the oil blanching process. The pieces of potato were thereby given an oil coating, which is desirable for several reasons. One of these is that it enables the housewife to prepare them for the table by oven heating or baking, and without the necessity of frying in deep fat. The oil coating also expedites further deep fat frying where, as in the case of most institutional users, this method of final preparation is followed. The oil coating also makes it easier to separate the individual pieces of frozen potato.

The brown coloring which is accomplished during oil blanching is desirable where the product is being prepared for retail sale. The flavor of oil which is necessarily imparted to the outside, or crust, of the pieces is also considered desirable.

Oil blanching adds to the value of the product, the increased value being estimated to be two or three cents a pound. As the shipper's witness stated, a company which utilizes this process in preparing potatoes for the market is, in effect, selling grease and potatoes.

After oil blanching has been completed, the product is cooled, quick-frozen to a temperature of -15 to -20 degrees F., packaged, labeled, and stored in zero storage.

The labels attached to the packages prepared for the retail market provide instructions for preparing frozen French fried potatoes for the table. They call for heating or cooking in an oven for a period of ten to twenty-five minutes at approximately 400 degrees F. Alternatively, according to such instructions, the frozen product may be fried in deep fat for from one and a half to two and a half minutes at a temperature of 350 to 400 degress F.

When oven heated, frozen French fried potatoes thaw out and are warm to the touch at the end of two or three minutes. They would still taste raw, however. The remainder of the indicated time for oven heating or baking is used for the actual cooking process.

One of the retail labels introduced in evidence describes the product as "cooked in pure vegetable oil." Another label contains this descriptive note: "High quality potatoes have been carefully selected, peeled, washed and cut. After

1. The applicable tariff is Trans-Continental Freight Bureau Freight Tariff 2 series and supplements thereto effective between January 6, 1954, and October 2, 1955.

2. Notes 1 and 6 do not affect the issue in this action.

3. The letters "NOIBN" are abbreviations of the words "Not Otherwise Indexed By Name."

being fried in pure vegetable oil they are immediately quick-frozen."

■ Based upon this evidence, the trial court found that the potatoes in question "do not lose their substantial identity" in the described process. The court also found that this process "involves the preservation of potatoes by blanching and freezing," and that the potatoes "are not cooked and are not prepared for final consumption." [4] The court concluded that the potatoes in question "are frozen fresh vegetables," and "are not a frozen cooked food." [5]

Pursuant to these findings and conclusions, the court held that the product which was transported meets the description set out in Item 4715 of the applicable tariff, and does not meet the description set out in Item 4600.

■ We will first consider whether the trial court correctly concluded that the product which went through the described process fits the description set out in Item 4715. If this conclusion is correct, it is immaterial whether the court was also right in concluding that the product does not fit the description set out in Item 4600. If, contrary to the court's conclusion, the product fits both descriptions, the shipper would nevertheless be entitled to the Item 4715 rate, because it would then be the lower of two equally applicable rates. United States v. Strickland Transportation Co., Inc., 5 Cir., 200 F.2d 234.

In order to determine whether packaged frozen French fried potatoes are commodities of the kind described in Item 4715, the processing and handling methods actually used and the nature of the resulting product must be compared with the processing and handling methods specified and resulting product described in that tariff provision.

The processing and handling contemplated by Item 4715 is that having to do with freezing (with or without sweetening) and packaging of fresh vegetables. It follows that, if some or all of the processing and handling methods utilized in a particular case serve a purpose substantially different than that of freezing and packaging, the product in question has been processed in a manner and for purposes not contemplated by Item 4715.

The oil blanching method here employed served some purposes pertinent to the processes and handling described in Item 4715. The killing of enzymes and stopping of bacterial decay, as a necessary preliminary to freezing, was accomplished. The undesirable effect of the freezing process in causing the pieces of potato to adhere together was minimized by the oil coating they received.

This oil blanching, however, also served additional purposes having nothing to do with sweetening, freezing, or packaging. It made it unnecessary to add oil if the frozen French fried potatoes were baked in the oven. It cut down on the oil required in the deep fat fryer of the housewife or restaurant cook, where this method of final preparation was used. It added color, as desired, and imparted an oil flavor.

We conclude that the product in question has been processed in a manner and for purposes not contemplated by Item 4715.

A comparison of the product resulting from the processes actually used, with

---

4. The findings quoted in this sentence are incorrectly denominated "Conclusions of Law."

5. These conclusions of law are incorrectly denominated "Findings of Fact." The court was here indicating that the product resulting from the process which was found to have been followed is a kind of product described in the tariff item. This required the court to construe the meaning of the tariff provision. The construction of a tariff provision presents a question of law. Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 290, 42 S.Ct. 477, 66 L.Ed. 943. Commenting on similar "findings" in another case of the kind we have here, this court said: " * * * Such findings should not be accorded the weight given true findings of fact by the trial court on contested issues." West Coast Products Corp. v. Southern Pacific Co., 9 Cir., 226 F.2d 830, 832.

the kind of product described in Item 4715, leads us to a similar conclusion.

The products described in Item 4715 are frozen fresh or green vegetables which have been packaged. A fresh or green vegetable is a raw vegetable.[6] Rawness can be overcome only by the application of heat. It is not overcome by freezing. Therefore, a vegetable which has been subjected only to a freezing process is still a raw vegetable. This is the kind of product contemplated by Item 4715.

The potatoes here in question, however, were subjected to a process not exclusively pertinent to freezing. The oil blanching which preceded freezing consisted of deep fat frying at 350 degrees F. for about a minute and a half. While the inside of the potato pieces remained raw after this was done, the surface of the pieces were no longer raw. They were necessarily seared by the hot fat, and, with regard to much of the product, were given a golden brown crust.

The result was a product which was partially cooked.[7] To complete the cooking, it was, at most, necessary to resume the same deep fat frying at the same temperature. But the deep fat frying, which is a necessary part of the cooking process in preparing French fries, had actually been completed to the point where, if the user chose, final cooking could be done in the oven.

Frozen vegetables which have been partially cooked and are no longer wholly raw, are not frozen fresh vegetables, within the meaning of Item 4715.

■ For the reasons indicated above, we hold that the Item 4715 rates were not applicable. The ultimate findings of fact which run counter to this conclusion are contrary to the undisputed evidence, and are clearly erroneous.[8]

The only question which remains to be decided is whether these frozen French fried potatoes fit the description set out in Item 4600.

The product in question comes under Item 4600 if it is a "food cooked * *, frozen * * * in containers * * "

As indicated above, these frozen French fried potatoes are partially cooked, but require more cooking before they are ready to serve. In our opinion, a food which is partly cooked is a "cooked" food, within the meaning of Item 4600. The word "cooked" is there used in contradistinction to "raw," and a partly cooked food is no longer raw. The

6. The term "fresh" is defined in Webster's New International Dictionary, 2d edition, as:
"1. Newly produced, gathered, or made; hence, not stored or preserved, as by pickling in salt or vinegar, refrigeration, etc.; as fresh vegetables, fruit, etc.; fresh tea, raisins, etc.
* * * * *
"7. Having its original qualities unimpaired."
The term "green" is defined as:
"6. Grown above the ground; more narrowly, leafy;—applied to certain vegetables, as peas and spinach, to distinguish them from roots, as beets and carrots."
In J. Hamburger Co. v. Atlantic Coast Line R. Co., 229 I.C.C. 795, it was said: "The word 'green' used in conjunction with vegetables generally means fresh in the sense of newly gathered."

7. The word "cook" is defined in Webster's New International Dictionary, 2d edition, as:
"1. To prepare (food) by boiling, roasting, baking, broiling, etc.; to make suitable for eating, by the agency of fire or heat; hence, in technical processes to prepare or treat by, or as by, similar action of heat."
In The Caterina Gerolimich, D.C.E.D. N.Y., 43 F.2d 248, 251, the term "cooked" is defined as meaning "heated to the cooking point by exterior forces."

8. We have examined the decisions cited by the parties relative to the agricultural exemption contained in section 203(b)(6) of the Interstate Commerce Act, 49 U.S.C.A. sec. 303(b)(6). Likewise, we have reviewed the cases cited by the parties concerning the "first processing" exemption (pertaining to agricultural commodities) set out in section 7(c) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. sec. 207(c). These decisions, while dealing with somewhat analogous problems, seem to us inconclusive, and, in view of the plainly-worded tariff provisions and undisputed evidence before us in this case, are not particularly helpful.

descriptive language of Item 4600 does not indicate to us that the cooking process must have been completed.

We therefore hold that the products here in question should have been transported at the Item 4600 rate.

Reversed.