**CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, a corporation, Plaintiff,**

v.

**FURNITURE FORWARDERS OF ST. LOUIS, INC., a corporation, Defendant.**

**No. 66 C 161(1).**

United States District Court
E. D. Missouri, E. D.

April 4, 1967.

Coburn, Croft & Kohn, St. Louis, Mo., for plaintiff.

Edward K. Fehlig, Hocker, Goodwin & MacGreevy, St. Louis, Mo., for defendant.

HARPER, Chief Judge.

### MEMORANDUM OPINION

The plaintiff, Chicago, Rock Island & Pacific Railroad Company, instituted this action against the defendant, Furniture Forwarders of St. Louis, Inc., to recover additional freight charges of $2,847.49 in Count I of the Complaint and $572.68 in Count II of the Complaint on certain railroad shipments of the defendant's goods.

The action arises under 49 U.S.C.A. § 1 et seq. The jurisdiction of this court exists and is based upon 28 U.S.C.A. § 1337.

The facts come to this court by way of oral testimony, including oral stipulations of fact, depositions, and exhibits. The facts are largely undisputed, there being only one legal issue.

Between 1963 and 1964, the defendant made thirteen shipments of furniture on the plaintiff's railroad. The exhibits show that all of the shipments were ordered for, and were billed for, export, and the defendant prepaid the export freight rate. Defendant's Exhibit A, which is one of the prepaid freight bills, contains, in part, the following statements:

*"Route*

    "DENVER DRGW WP GN FOR EXPORT TO KOREA WATER COMMON CARRIER

*"Consignee and Address*
    "RECEIVING OFFICER
    NAVAL SUPPLY DEPOT PIER 91
    SEATTLE WASH"

The other prepaid freight bills contain statements similar to the above, the principle variations being in the foreign destination. (Other destinations were Hawaii, Japan and Okinawa.)

The shipping orders (e. g. Plaintiff's Exhibit 1–A) contain slight variations of the following statement: "FOR EXPORT TO JAPAN VIA WATER COM-

MON CARRIER." (Again, the variations concern the foreign destination.)

These shipments were consigned to and delivered to the receiving officer of the Naval Supply Depot, Pier 91, in Seattle, Washington.

Pier 91 is a United States Navy supply depot encompassing an area of approximately one-third of a square mile. It consists of two piers along with some warehouses, barracks, and other United States Government buildings and facilities. There is a large amount of trackage within the supply depot known as Pier 91, but no commercial carrier is permitted to operate therein. The commercial carriers always leave their cars on tracks outside the depot; this is where the commercial carriers' responsibilities end. (This is also where the thirteen shipments in question were left.) Once the government takes charge of the goods the shipper and the carrier do not know the final destination of such goods unless this information is requested and released.

When the thirteen shipments in question arrived in Seattle, Paul N. Davis, the rate supervisor of the Great Northern Railway, terminal carrier of the thirteen shipments, decided that the domestic rate instead of the export rate should have been applied to the shipments. Mr. Davis had a rate adjustment made applying the domestic rate, the plaintiff's account was

charged with the adjusted balance, and a corrected waybill was sent to the plaintiff to be collected from the defendant. The defendant refused to pay the adjusted balance, and thereafter, on April 29, 1966, the plaintiff brought the present action.

The sole issue in this case is whether the defendant should have been charged with the domestic rate instead of the lower export rate on these thirteen shipments of goods. The parties stipulated that the proper export rate was paid, and if the export rate does not apply, the damages sought by the plaintiff in Count I of the Complaint are correct. Count II of the Complaint was dismissed with prejudice at the trial of this action.

■ The rates charged for interstate rail shipments are controlled by tariffs, published by the Interstate Commerce Commission. Tariffs have the same force and effect as a statute. Pennsylvania Railroad v. International Coal Mining Company, 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446. The parties are in agreement that this case is controlled by TRANS–CONTINENTAL FREIGHT BUREAU'S FREIGHT TARIFF 29–L (hereinafter referred to as Tariff 29–L). Tariff 29–L sets the export and distance rates on commodities being shipped by rail. The relevant section of Tariff 29–L is in part as follows:

"1130 RESPONSIBILITY FOR FREIGHT AT PACIFIC COAST PORTS.

Rates and privileges as stated in this tariff apply only to freight which * * * does not leave the possession of the rail carriers until delivered to common carriers by water at the Pacific Coast Ports of Interchange with such common carriers by water and rail carriers' responsibility shall cease upon such delivery."

The plaintiff contends that the thirteen shipments in question were not entitled to the export rate because, due to the unusual nature of Pier 91, they failed to satisfy the provisions of Item 1130 of Tariff 29–L in that the goods left the

possession of the rail carrier before delivery to a common carrier by water.

The defendant, on the other hand, contends that because of the nature of the plaintiff's responsibilities with the shipments, the substance of Item 1130 was not meant to bar the application of the export rate here. Further, the defendant, classifying the United States as a rail carrier, contends that there was no interruption in the possession of the shipments by rail carriers before the goods were delivered to common carriers by water, and that, therefore, these shipments came within the express provisions of Item 1130.

In determining whether Item 1130 of Tariff 29–L excludes the application of the export rate to the thirteen shipments in question, the following language in United States v. Missouri, Kansas & Texas Railroad Co., 194 F.2d 777, 778–779, is helpful:

> "The construction of a printed railroad tariff presents a question of law and does not differ in character from that presented when the construction of any other document is in dispute. The four corners of the instrument must be visualized and all the pertinent provisions considered together, giving effect so far as possible to every word, clause, and sentence therein contained. The construction should be that meaning which the words used might reasonably carry to the shippers to whom they are addressed, and any ambiguity or reasonable doubt as to their meaning must be resolved against the carriers. But claimed ambiguities or doubts as to the meaning of a rate tariff must have a substantial basis in the light of the ordinary meaning of the words used and not a mere arguable basis." (Cases cited, including Christensen v. Northern Pac. Ry. Co., 184 F.2d 534 (CA 8).)

Tariff 29–L was obviously drafted to cover *all* export shipments of commodities. Unfortunately, however, the drafters thereof did not contemplate the unusual situation which government supply depots similar to Pier 91 would create.

This conclusion is borne out by the fact that Tariff 29–L, Item 1130, has since been amended to cover the problem posed by the government supply depots; shipments to government supply depots are now unquestionably entitled to export rates provided the shipper can furnish proof of exportation within sixty days after the goods are received at the supply depot.

■ The meaning of Item 1130 is certainly doubtful when applied to the present situation, since such a situation was not even contemplated when the Item was drafted. Any doubt as to the tariff's meaning must be resolved against the carrier, United States v. Missouri, Kansas & Texas Railroad, supra, and therefore, this court resolves the doubt as to the thirteen shipments in question against the plaintiff.

■ For the foregoing reasons, this court finds that Item 1130 of Tariff 29–L did not exclude the application of export rates to the shipments in question.

This memorandum opinion is adopted by the court as its findings of fact and conclusions of law, and the clerk of this court is directed to enter judgment in favor of the defendant.