Harry Gittleson, J.
This is a test case. It is one of four pending actions in this and another court which in the aggregate seek judgment against the defendant totaling the sum of $300,000.
This cause is predicated upon an alleged claim for additional freight charges pursuant to the terms of the plaintiff’s tariff schedules affecting the movement of eight cars originating from New York destined for San Francisco on the 16th of October, 1962.
The plaintiff is a common carrier. The defendant is a freight forwarder. For a long time prior to October 16, 1962 it was the defendant’s custom, with plaintiff’s knowledge and acquiescence, to load cars in New York destined for California, which would be stopped at Newark and coupled with other cars loaded at this point. On each occasion the shipment would be covered by one bill of lading.
About one and one-half years after the shipment was made, a common carrier asked the plaintiff why it was not adhering to its tariff schedules. Activated by such inquiry, the plaintiff allegedly discovered that it had consistently undercharged the defendant solely as a result of miscalculation and not any misinterpretation of its bill of lading.
Futile negotiations followed, resulting in the institution of this action three years after the shipment at issue was completed. In the interim, the defendant had collected its charges from its customers computed upon several factors, inclusive of the freight charges paid to the plaintiff.
*536 Should plaintiff prevail, there is little or no likelihood that the defendant could recoup its losses from its customers due in part to the plaintiff’s alleged miscalculation and the extraordinary time which elapsed between the date of shipment and the institution of this action.
Notwithstanding such mitigating circumstances, this court would be powerless to prevent an injustice if in fact the gross miscalculations resulted solely from a failure to compute the freight charges in accordance with the scheduled tariff carefully spelled out and understood by all those affected thereby. On the other hand, relief could and should be granted if the language contained in the tariff schedule was equivocal and/or ambiguous. Jn that instance the language would be strictly construed as against the draftsman (in this instance, the plaintiff) and in favor of the shipping public (defendant). (See Calcium Carbonate. Co. v. United States, 256 F. Supp. 99, 102; Atlantic Coast Line & Southern Ry. Co. v. Atlantic Bridge Co., 57 F. 2d 654; Union Wire Rope Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 66 F. 2d 965; United States v. Missouri Pacific R. R. Co., 250 F. 2d 805, 808; United States v. Missouri-Kansas-Texas R. R. Co., 194 F. 2d 777; United States v. Strickland Transp. Co., 200 F. 2d 234, 235; Chicago, Rock Is. & Pacific R. R. Co. v. Furniture Forwarders of St. Louis, 267 F. Supp. 175, 177.)
Apparently the regulation has a two-fold purpose: (1) To serve the ‘ ‘ operating convenience of the plaintiff ” — a device calculated to save the carrier part of its operating costs, and (2) To permit the defendant to save freight charges by causing shipments to be included under one bill of lading.
Item 490 of Tariff 44-A reads as follows: “ 2. When a carload shipment delivered at stations named in Column A [N.Y.] is ordered by the shipper to be stopped off at stations named in Column B [Newark] for completion of loading under the provisions set forth in items 250 to 540, this company may, for operating convenience, place a separate car at points named in Column B [Newark], to be loaded with the freight that would otherwise be loaded there into the car or cars containing the shipment ordered to be stopped and such shipment and the car or cars so loaded at stations named in Column B [Newark] shall be treated in all respects as though such car or cars had been partially loaded at stations named in Column A [N.Y.], and actually stopped off at stations named in Column B [Newark] for completion of loading ” (Emphasis added).
Note 2 of Item 535 reads as follows: “ Parts 2 and 3 of Item No. 515 of Trans Continental Freight Tariff 1-G> I.C.C. 1588, *537 issued by W. J. Preuter, TPO does not apply at stations named in Column B on shipments originating at a station named in Column A, as to which, carrier will furnish not more than one car at each station named in Column B for each carload shipment originating at a station named in Column A (See items 505 to 530 for Columns A & B).
Plaintiff and defendant differ in their interpretation of the aforesaid regulations. Plaintiff contends that under its scheduled rates a shipper is permitted to couple one car only (in this case at Newark) en route with the parent cars (in this case originating in New York) and have same included in one bill of lading. The defendant contends, on the other hand, that the regulation sanctions the coupling of two or more cars (in this instance at Newark) to the cars originating in New York.
I hold that the language of item 490 of Tariff 44-A is ambiguous, and therefore, this court must construe it against the draftsman (the plaintiff) and in favor of the shipper (the defendant) (see Calcium Carbonate Co. v. United States, and the other cases cited hereinabove).
The court’s conclusion finds support in the practical construction placed upon the foregoing language by the parties. The practice which resulted in the fixation of the freight charges already paid by the defendant has prevailed for some time prior to the date of the shipment in suit. It is unlikely that such construction would be the result of oversight on the plaintiff’s part. To hold otherwise would necessarily attribute to the plaintiff “ a degree of indifference, negligence or plain stupidity ” (Calcium Carbonate Co. v. United States, 256 F. Supp. 99,103, supra).
Note 2 of item 535 does not clarify the principal regulation. If anything, it renders it more confusing.
The cases cited by the plaintiff are readily distinguishable and thus wholly inapplicable to the case at bar. Those cases involve an interpretation of tariff regulations which is given in language which is at once clear, unambiguous and wholly unequivocal. Under those circumstances the “ estoppel doctrine ” may not be invoked (see Kansas Southern Ry. v. Carl, 227 U. S. 639; Louisville & Nashville R. R. v. Maxwell, 237 U. S. 94; Steele v. General Mills, 329 U. S. 433; Pennsylvania R. R. Co. v. Titus, 216 N. Y. 17; Willson v. American Ry., Express Co., 204 App. Div. 59, affd. 239 N. Y. 562).
I hold as a matter of law that the defendant is entitled to have the complaint dismissed.