PENN CENTRAL COMPANY, Appellee,

v.

GENERAL MILLS, INC., Appellant.

No. 20459.

United States Court of Appeals,
Eighth Circuit.

March 25, 1971.

Elmer H. Atchley, David C. Priebe, Minneapolis, Minn., for appellant.

Harry S. Stearns, Jr., of Stearns, Goetteman & Narveson, Saint Paul, Minn., for appellee.

Before MEHAFFY and ROSS, Circuit Judges, and STEPHENSON, Chief District Judge.

ROSS, Circuit Judge.

This action was brought in the United States District Court for the District of Minnesota by Penn Central Company against General Mills, Inc., to recover freight charges under and pursuant to the Interstate Commerce Act. As a civil action arising under an act of Congress regulating commerce, jurisdiction is properly based on 28 U.S.C. § 1337. From a judgment for the plaintiff, defendant appeals. We affirm.

At various times between August 1, 1966 and the commencement of this action, General Mills shipped freight from Lancaster, Ohio in interstate commerce over the lines of Penn Central and its connecting carriers to various consignees at different destinations. Penn Central claims the defendant is indebted to it for these freight shipments in the total sum of $8,203.99 in accordance with

Penn Central's interpretation of the applicable tariff on file with the Interstate Commerce Commission. General Mills claims that the freight charges for the shipments in question were substantially less than that amount under General Mills' interpretation of the same applicable tariff and that it has already paid the correct amount due under said tariff.

Before the Court for interpretation are Sections 1 and 2 of Rule 24 of a tariff entitled "Uniform Freight Classification 9" (U.F.C.9) issued August 1, 1966 and effective September 20, 1966.[1]

The portion of Section 2 of Rule 24 which is interpreted differently by Penn Central and General Mills is the part which reads as follows: "at CL [carload] rate or rating applicable on entire shipment."

The rule contemplates shipments where more than one car is used and the last car or "trailer" car is not loaded to capacity. Section 1 determines the formula for the charge to be paid for the "lead" car or cars which are filled to capacity; and Section 2 sets forth the formula to be used on the trailer car.

In 1966 General Mills began the manufacture and distribution of a commodity referred to as "snacks." At that

1. Rule 24
Section 1.—When CL [carload] freight, the authorized minimum weight for which is 30,000 lbs. or more, is received in excess of the quantity that can be loaded in or on one car, the following shall apply:
The shipment must be made from one station, by one shipper, in one calendar day running from midnight to midnight, on one shipping order or bill of lading, to one consignee and destination.
Each car, except car carrying excess, must be loaded as heavily as loading conditions will permit, and each car so loaded charged at actual or authorized estimated weight, subject to established minimum CL weight, and at CL rate or rating applicable.
The marked capacities of cars are shown in the Official Railway Equipment Register. I.C.C.–R.E.R. No. 372, C.T.C.–R.E.R. No. 372, The Railway Equipment and Publication Company, Agent.

Section 2.—Except as provided in Rule 60, the excess over quantity that can be loaded in or on one car shall be charged:
(a) If loaded in one closed car, except as provided in Paragraph (c), at actual or authorized estimated weight, and at CL rate or rating applicable on entire shipment, subject to a minimum weight of 10,000 lbs.
(b) If loaded on one open car, except as provided in Paragraph (c), at actual or authorized estimated weight and at CL rate or rating applicable on entire shipment, subject to a minimum charge of 4,000 lbs. at Class 100 rate.
(c) If loaded in or on one car specially prepared either by carrier or shipper, including damage free cars, permanent dunnage cars, and cars equipped with bars, racks or other devices (not ordinary dunnage) used to secure the lading, at actual or authorized estimated weight and at CL rate or rating applicable on entire shipment, subject to minimum weight of 15,000 lbs.

time snacks were grouped with a large list of commodities in railroad pricing tariffs upon which "alternating" freight rates were applicable.[2]

In the hypothetical example argued by both parties before this Court, the rate for a 60,000 pound shipment of snacks was assumed to be 40½ cents per cwt. and the rate for a 36,000 pound shipment was assumed to be 49½ cents per cwt. It was also assumed that the cars of the type usually used in these shipments would hold a maximum of 34,000 pounds of snacks but that 36,000 pounds was the authorized minimum weight for the lead car. Since the cars were "closed," under Section 2(a) of Rule 24 the authorized minimum weight for the trailer car was 10,000 pounds.

A 60,000 pound shipment of snacks would thus be hauled in two cars with the lead car carrying 34,000 pounds and the trailer car carrying 26,000 pounds. Both Penn Central and General Mills agree that the proper charge for the lead car, under Section 1 of the tariff above set forth, is 36,000 pounds (minimum load) multiplied by 49½ cents per cwt. or $178.20. The dispute concerns only the trailer car. General Mills contends that the proper charge for the trailer car is 26,000 pounds multiplied by 40½ cents per cwt. or $105.30 on the ground that entire shipment is 60,000 pounds and that, under Section 2(a) of Rule 24, the trailer car is entitled to the rate on the entire shipment of 60,000 pounds. Penn Central contends that the 60,000 pound rate is available only when the snacks are heavier (such as canned nuts) and the entire 60,000 pounds can be loaded in a single car.

No cases have been cited by either party which interpret that portion of the tariff in question. However, there are certain well-established rules of construction generally adhered to by the courts.

■ First, where, as in this case, there is no issue of fact[3] and the words of the tariff are used in their ordinary meaning with no particular connotation in the expert field of the Interstate Commerce Commission, then the interpretation of a tariff ordinarily presents a question of law. United States v. Western Pac. R.R., 352 U.S. 59, 66, 69, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); W. P. Brown & Sons Lumber Co. v. Louisville & N. R.R., 299 U.S. 393, 397, 57 S.Ct. 265, 81 L.Ed. 301 (1937); Great N. Ry. v. Merchants Elevator Co., 259 U.S. 285, 290, 42 S.Ct. 477, 66 L.Ed. 943 (1922); United States v. Great N. Ry., 337 F.2d 243, 246 (8th Cir. 1964); A.E. West Petroleum Co. v. Atchison, T. & S.F. Ry., 212 F.2d 812, 814 (8th Cir. 1954). Accord, Union Pac. R.R. v. Ore-Ida Potato Products, 252 F.2d 505, 507 n.5 (9th Cir. 1958); United States v. Missouri-Kansas-Texas R.R., 194 F. 2d 777, 778 (5th Cir. 1952).

■ Second, a tariff is no different from any contract. Great N. Ry. v. Merchants Elevator Co., supra 259 U.S. at 291, 42 S.Ct. 477; United States v. Great N. Ry., supra 337 F.2d at 246. Accord, Union Pac. R.R. v. United States, 434 F.2d 1341, 1345 (Ct.Cl. 1970); United States v. Missouri-Kansas-Texas R.R., supra 194 F.2d at 778. And thus, its true application must sometimes be determined by the factual situation upon which it is sought to be impressed. A.E. West Petroleum Co. v. Atchison, T. & S.F. Ry., supra 212 F.2d at 821.

■ Third, in interpreting a tariff, its terms must be taken in the sense in which they are generally used and ac-

2. Alternating rates are rates contained in a freight pricing tariff which apply to two or more specified minimum weights for the same commodity moving between the same origin and destination, during the same time period. The highest rate applies on the lowest minimum weight and the lowest rate applies on the high-est minimum weight contained in the freight pricing tariff.

3. At the District Court hearing on this matter, the parties stipulated to the absence of any fact issues in this case and agreed that there was only a question of law pertaining to the interpretation of U.F.C.9.

cepted; and it must be construed in accordance with the meaning of the words used. Chicago, B. & Q. R.R. v. United States, 221 F.2d 811, 812 (7th Cir. 1955); United States v. Missouri-Kansas-Texas R.R., *supra* 194 F.2d at 778–779; Western Grain Co. v. St. Louis-San Francisco Ry., 56 F.2d 160, 161 (5th Cir. 1932).

■ Fourth, the tariff should be construed strictly against the carrier since the carrier drafted the tariff; and consequently, any ambiguity or doubt should be decided in favor of the shipper. United States v. Great N. Ry., *supra* 337 F.2d at 249; Union Wire Rope Corp. v. Atchison, T. & S.F. Ry., 66 F. 2d 965, 967 (8th Cir.), cert. denied, 290 U.S. 686, 54 S.Ct. 122, 78 L.Ed. 591 (1933). Accord, Union Pac. R.R. v. United States, *supra* 434 F.2d at 1346; National Van Lines, Inc. v. United States, 355 F.2d 326, 333 (7th Cir. 1966); United States v. I.C.C., 91 U. S.App.D.C. 178, 198 F.2d 958, 966 (D.D. C. Cir. 1952).

■ Fifth, such ambiguity or doubt must be a reasonable one and should not be the result of a straining of the language. And, there must be a substantial and not a mere arguable basis in order to justify resolving the doubt against the carrier. Christensen v. Northern Pac. Ry., 184 F.2d 534, 536 (8th Cir. 1950). Accord, Bolin Drive-A-Way Co. v. United States, 283 F.2d 697, 698 (Ct.Cl. 1960); United States v. Missouri-Kansas-Texas R.R., *supra* 194 F.2d at 778–779.

■ Sixth, published rules relating to tariffs must have a reasonable construction and should be interpreted in such a way as to avoid unfair, unusual, absurd or improbable results. A.E. West Petroleum Co. v. Atchison, T. & S.F. Ry., *supra* 212 F.2d at 816; W.J. Foye Lumber Co. v. Pennsylvania R. R., 10 F.2d 437, 439 (8th Cir. 1926). Accord, National Dairy Products Corp. Kraft Foods Division v. Missouri-Kansas-Texas R.R., 385 F.2d 173, 177 (5th Cir. 1967); National Van Lines, Inc. v. United States, *supra* 355 F.2d at 332;

Glickfeld v. Howard Van Lines, 213 F. 2d 723, 727 (9th Cir. 1954); Hygrade Food Products Corp. v. New York Cent. R. R., 266 F.Supp. 946, 951 (N.D.Ill. 1967).

■ And finally, a strict construction of a tariff against a carrier is not justified where such a construction ignores a permissible and reasonable construction which conforms to the intentions of the framers of the tariff, avoids possible violations of the law, and accords with the practical application given by shippers and carriers alike. National Van Lines, Inc. v. United States, *supra* 355 F.2d at 333. Hygrade Food Products Corp. v. New York Cent. R.R., *supra* 266 F. Supp. at 951.

■ Applying the above rules to the instant case, it is apparent that the interpretation urged by General Mills would lead to an unfair, unusual, absurd or improbable result and that the interpretation urged by Penn Central is a permissible and reasonable construction which conforms to the apparent intention of the framers of the tariff.

The key words of the disputed portion are "at CL rate or rating applicable on entire shipment." In this Court's opinion, the District Court properly held that the rational and logical meaning of this clause is that the entire shipment should receive the carload rate of the lead car even though the trailer car is not full, and that the trailer car could, in the absence of the clause, be charged a higher rate. This gives the shipper the same (but not a higher) rate on the trailer car, regardless of the amount of a shipment (if it reaches the stated minimums) as the shipper receives on the lead car or cars.

General Mills does not claim that the lower 60,000 pound rate should apply to both the lead and trailer cars. It seems logical to assume that had the railroad intended to promulgate a lower rate for multi-car shipments of 60,000 pounds or more, it would have made such lower rate applicable to both the lead and the trailer cars and not just to the trailer car as claimed by General Mills.

The interpretation urged by General Mills conveniently ignores the reference to "CL rate" and emphasizes the words "rating applicable on entire shipment." This Court believes that, while the language is not perfect, when read in its entirety, the proper interpretation is as set forth by the District Court. To hold otherwise would be to permit General Mills, in conjunction with its customers, to conveniently adjust the rates downward by making shipments which would not quite fill the trailer car of a two-car shipment, a result which in the opinion of this Court is unjust and absurd and neither reasonable nor consistent with the purposes of the tariff.[4]

Judgment affirmed.

---

4. General Mills' position is made even less plausible by the extension of the hypothetical situation argued by the parties to a load of 80,000 pounds of General Mills' snacks. In such case there would be two lead cars carrying 34,000 pounds each and a trailer car carrying 12,000 pounds. Both parties agree that both lead cars would carry the full 49½ cents per cwt. rate for the minimum weight of 36,000 pounds under Section 1 of Rule 24 for a total cost of $356.40. The trailer car, under General Mills' interpretation would carry the 40½ cents rate on 12,000 pounds or a total of $48.60. Thus the total 80,000 pound shipment would cost General Mills under its own interpretation, the sum of $405.00 or 50⅝ cents per cwt. A smaller 60,000 pound shipment would cost General Mills, under its own interpretation, the sum of $283.50 or 47¼ cents per cwt. Thus by manipulating the number of pounds to be shipped so that the trailer car has as many pounds as possible, but is not fully loaded, General Mills could conceivably lower its rate per cwt. substantially. By shipping a total of 67,500 pounds it could therefore reduce its cost to 46½ cents per cwt. (under its interpretation of the section) compared to 50⅝ cents per cwt. for 80,000 pounds and 47¼ cents per cwt. for 60,000 pounds.