**CARRIER SERVICE, INC., Appellant,**

v.

**BOISE CASCADE CORPORATION, Appellee.**

**No. 85–2072.**

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1986.

Decided July 7, 1986.

---

Mark L. Ross, Little Rock, Ark., for appellant.

Karl B. Brooks, Boise, Idaho, for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by special designation.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

McMILLIAN, Circuit Judge.

Carrier Service, Inc. (Carrier) appeals from a final order entered in the District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of Boise Cascade Corporation (Boise Cascade). For reversal, Carrier argues that the district court erred (1) in holding that the Delta tariffs were ambiguous and in resolving the ambiguity in favor of Boise Cascade and (2) in holding that Carrier's collection efforts were unreasonable practices prohibited by the Interstate Commerce Act. For the reasons discussed below, we affirm.

The facts in this case are not disputed. In 1982 Boise Cascade, a manufacturer of composite cans and other consumer packaging products, entered into an agreement with Carrier's predecessor in interest, Delta Motor Freight, Inc. (Delta). Delta agreed to ship tin plate and can ends between Boise Cascade's plants in Memphis, Tennessee, and its plants at Bridgeton, Missouri (Champ Village),[2] and Madison and Wood River, Illinois. Pursuant to this agreement, Delta issued Tariff DMFI 2000; the title page of the tariff stated that the tariff covered "transportation of metal products between St. Louis, Missouri and Memphis, Tennessee via regular routes." Approximately four months later, in April 1982, Delta issued Tariff DMFI 2000–B; the tariff stated that it cancelled DMFI 2000–A and covered "transportation of metal products between St. Louis, Missouri, and Jackson, Tennessee, and Memphis, Tennessee, via regular routes." In accordance with the tariffs, Delta delivered the shipments and billed Boise Cascade. Boise Cascade paid the bills, and Delta accepted payment without protest.

In 1983 Delta employed Carrier to audit its past freight bills and assigned all rights

2. Champ Village is an industrial complex located within the municipality of Bridgeton, Missouri, which is approximately 10 miles from the municipal boundaries of the City of St. Louis, Missouri.

to the proceeds of the audit to Carrier. In 1984 Carrier sued Boise Cascade in federal district court for the difference between the rates Boise Cascade paid under the Delta tariffs and the rates which Carrier argues should have been charged. Carrier alleged that the Delta tariffs applied only to shipments to St. Louis proper (there were none) and did not apply to shipments to Champ Village, Madison or Wood River because those shipments were outside the municipal boundaries of the City of St. Louis. Carrier sought $71,117.83 in undercharges.

Both parties filed motions for summary judgment. The district court granted Boise Cascade's motion. The district court found that the Delta tariffs were ambiguous and would lend themselves to misinterpretation by the ordinary users of such tariffs. The district court therefore construed the tariffs in "the manner originally agreed to by the parties" and held that Carrier was not entitled to recover the alleged undercharges. This appeal followed.

The central issue in this case is whether "St. Louis, Missouri" is an ambiguous term in the Delta tariffs. Carrier argues that the district court construed the tariff contrary to the rules of tariff construction and that the district court's finding of ambiguity is wholly unsupported by any reading of the tariff. Carrier further argues that there is no case law which holds that the name of a city in a tariff can be considered ambiguous or a technical term. Carrier therefore contends that "St. Louis, Missouri" must be given its plain and ordinary meaning in the Delta tariffs with the result that other tariffs which specifically include Madison, Illinois, Wood River, Illinois, and Champ Village, Missouri, would apply to the shipments made by Delta.

Boise Cascade argues that the term "St. Louis, Missouri" is ambiguous because the term may refer to the City of St. Louis, to the greater St. Louis metropolitan area, or

to the commercial area of St. Louis/East St. Louis as defined by 49 C.F.R. § 1048.11 and § 1048.101 (1983).[3] Boise Cascade further argues that the term is ambiguous in the context of the tariff because Boise Cascade has no facilities in the City of St. Louis.

This court in *Penn Central Co. v. General Mills, Inc.*, 439 F.2d 1338 (8th Cir.1971), held that a tariff is to be construed as any other contract, *id.* at 1340, and should be interpreted in such a way as to avoid "unfair, unusual, absurd or improbable results." *Id.* at 1341. The district court properly construed "St. Louis, Missouri" in the manner intended by the parties. To construe "St. Louis, Missouri" to refer to the City of St. Louis only would result in an absurd result. Boise Cascade would have contracted for delivery to a place where it had no facilities and the contract between the parties would have been meaningless. We hold that the district court's finding and conclusion that "St. Louis, Missouri" was an ambiguous term in the Delta tariff and its interpretation of the term to include Champ Village, Missouri, Wood River, Illinois, and Madison, Illinois, was and is not clearly erroneous.

Carrier next argues that the Delta tariffs may not be applied because they do not conform with various regulations of the Interstate Commerce Commission. We have carefully reviewed these arguments and find them to be without merit.

Lastly, Carrier argues that the district court was without jurisdiction to hold that its attempted collection of alleged undercharges was an unreasonable practice. Citing *United States v. Western Pacific R.R.*, 352 U.S. 59, 68–69, 77 S.Ct. 161, 167–68, 1 L.Ed.2d 126 (1956), Carrier contends that only the Interstate Commerce Commission had jurisdiction to determine if a collection effort is unreasonable. Because we have determined that the Delta tariffs applied to

---

**3.** 49 C.F.R. § 1048.11 (1983) defines St. Louis, Missouri and East St. Louis, Illinois, as a single municipality for the purpose of determining a commercial zone. 49 C.F.R. § 1048.101 (1983) states that where a municipality has a population of 500,000 persons but less than 1,000,000 persons, all unincorporated areas and any other municipalities which are within 15 miles of the corporate limits of the municipality will be part of the commercial zone.

the shipments between Boise Cascade's plants in Memphis and Jackson, Tennessee, and Boise Cascade's plants in Champ Village, Missouri, and Wood River and Madison, Illinois, and because Boise Cascade was billed at and paid the rates established by the Delta tariffs, we need not decide the issue whether the district court had jurisdiction to determine the reasonableness of Carrier's collection efforts.

Accordingly, the judgment of the district court is affirmed.