BELLOWS *v.* CRANE LUMBER CO.

1. LOGS AND LOGGING—CONTRACTS—ABANDONMENT.

Where parties entered into a contract whereby each was to drive logs for the other, one of the parties, after performance had begun by him, could not be deprived of his rights by the desire of the other to abandon the contract.

2. SAME—STATUTORY ACTION FOR EXPENSES—DEFENSES—PLEADING.

In an action under 2 Comp. Laws 1897, § 5075, to recover the cost of driving the logs of another constituting an obstruction to the stream, defendant, under the general issue, may show that there was a contract between the parties that each should drive the other's logs.

3. SAME—INSTRUCTIONS—HARMLESS ERROR.

An instruction permitting the jury to find that a parol contract, by which each party was to drive the other's logs, contemplated a liability for any excess in the value of the services rendered, if erroneous, was not prejudicial to appellant.

4. SAME—QUESTION FOR JURY.

In an action under 2 Comp. Laws 1897, § 5075, for expenses incurred in running logs by reason of defendant's attempt to float certain hard-wood logs, which sank and obstructed the stream, an instruction that plaintiff could not recover if defendant drove his logs in a reasonable manner, putting on sufficient men, and using all diligence to keep the river clear, was erroneous, there being testimony for the jury as to whether it was reasonable for defendant to undertake to float such logs at the time it was attempted.

5. JUDGMENT—COSTS—SET-OFF—APPEAL.

A judgment awarding costs to defendant in an action brought in the circuit court, in which plaintiff recovered less than $100, will not be reversed, on the ground that plaintiff's claim was reduced below that amount by set-off, unless such fact clearly appears from the record.

Error to Benzie; Chittenden, J. Submitted January 11, 1901. Decided May 7, 1901

*Assumpsit* by Elwin Bellows and Adelbert Bellows, copartners as Bellows Brothers, against the Crane Lumber Company, for expenses incurred in running logs by reason of defendant's obstruction of the stream. From a judgment for plaintiffs for less than the amount claimed, they bring error. Reversed.

*George Whitbeck* and *Smurthwaite & Fowler*, for appellants.

*D. G. F. Warner*, for appellee.

HOOKER, J.   The Betsie river is almost 125 miles long, and is used for floating logs, both hard and soft wood. The parties to this action are lumbermen, and in the spring of 1899 had logs upon this stream; and a Mr. Butler had a quantity also. Butler and the plaintiffs had logs near the head of the river, and the plaintiffs had some about 20 or 30 miles from its mouth, and a short distance below defendant's logs, which were hard-wood logs. The plaintiffs and Butler · furnished men, and started a drive from the upper waters of the stream, while the defendant put its hard-wood logs in the river, and started a drive from the point where they were banked, called "County Line," and claims that in doing so it took along with them the plaintiffs' logs in the river at that point or below.

The plaintiffs have brought this action to recover under the statute (2 Comp. Laws 1897, chap. 129) from the defendant its proportionate share of the expense of bringing down the upper drive, and for expense incurred by reason of defendant's obstruction of the river by its hardwood logs,—of which it is claimed many sunk by reason of the attempt to run them unseasonably,—and by its failure to bring down the rear of the lower drive. Plaintiffs claim that the defendant, in managing its drive, only took down such logs as naturally floated down, leaving stranded logs and jams for the plaintiffs to break and bring down with the second or upper drive. Plaintiffs

claim also that they had charge of the upper drive, and paid all of the help and expenses, and that Butler settled and paid them his proportionate share upon the basis of a liability from defendant to the plaintiffs for its proportionate share of the expense.

The defendant asserts: ·

*First.* That the upper drive was a mutual undertaking between the plaintiffs and Butler, and that, if defendant is liable at all, it is to both plaintiffs and Butler, and not to plaintiffs alone; and that, consequently, there is a nonjoinder of parties plaintiff, which should preclude a recovery in this action.

*Second.* That a contract was made between plaintiffs and Butler upon the one side and defendant upon the other, whereby the latter undertook to bring down to Frankfort plaintiffs' logs below the county line, in consideration of their bringing down its logs from above; and that such contract was performed, and that, consequently, there was nothing due to the plaintiffs.

*Third.* Defendant says that, if it did not "bring down clean" the rear of its drive, it was because the plaintiffs prevented it by willfully overtaking and running through defendant's drive with the head of plaintiffs' drive.

The case went to the jury, who returned a verdict for the plaintiffs of $25, and upon defendant's motion a judgment for that amount was rendered in favor of the plaintiffs, and a judgment for costs in favor of the defendant. The plaintiffs have brought the case here by writ of error.

As the jury found a verdict for the plaintiffs, we may lay out of the case all questions relating to nonjoinder, and conclude that they found that the plaintiffs alone brought down the upper drive,—a question that was distinctly left to them by the charge.

We are of the opinion that it was proper for the trial court to submit to the jury the question in relation to the alleged contract. The testimony of two witnesses tends to prove it, and, while there is proof that Mr. Bellows changed his mind, and said that he would have nothing to do with it, this was after defendant had begun to run the logs; and, moreover, Bellows' dissatisfaction does not

appear to have been communicated to it. At all events, it is not claimed that defendant assented to an abandonment of the contract. If the contract was made, and performance was begun by the defendant, it could not be deprived of its rights under it by a desire to abandon it on the part of the plaintiffs. Plaintiffs' counsel concede in their brief that the jury must have found that the contract existed. We have no doubt of the right of defendant to prove this contract under the plea of the general issue.

Some allusion was made in the charge to an implied contract, and the learned judge carried the idea that the jury might find an implied promise that the expense of running the other's logs by the respective parties might be taken, and a balance struck. In other words, he seems to have left it to the jury to determine whether the engagement went so far as to contain an express understanding that the service of one should wholly offset that of the other, or only to the extent of the value of the service. Being an oral contract, it was proper to leave the question to the jury. Upon that theory the expense accounts of both were admissible. But, in any event, this instruction, whether justified by the evidence or not, was more favorable to the plaintiffs than to have limited the jury to the proposition that one service was to have been in full for the other, if any contract was made. Moreover, as we have said, plaintiffs' brief concedes that "the jury undoubtedly found that the plaintiffs and defendant agreed to drive each other's logs;" and it must have been upon one or the other of these theories, and we think it was for the jury to say which.

Complaint is made that the court admitted evidence that the plaintiffs directed their men to hurry their drive, with a view to running through defendant's drive, and that the defendant drove its logs in a workmanlike manner; and that he instructed the jury that defendant had a right to drive its hard-wood logs when it chose, so long as it put on men enough to keep them moving with the current. These drives started about 100 miles apart, one

having to go 25 miles and the other 125, and it is claimed that the latter overtook the former before it had gone over half of its distance. It is claimed that this was due to the inability of the defendant to move logs which would sink, and that, owing to the condition of the hard-wood logs, a large proportion of them did sink, and that the attempts of defendant to bring down the rear of the first drive were ineffective. On the other hand, it is said that the jams were caused by plaintiffs driving their logs into and through defendant's rear, thereby increasing the quantity of timber in the river, and the amount of labor necessary to bring down defendant's rear.

2 Comp. Laws 1897, § 5075, makes it the duty of every person who uses the waters to run logs to put on men enough to prevent obstruction to navigation, and gives to others the right to compensation for increased labor in floating their logs in consequence thereof. It would be going a great way to say that a man has the right to attempt to run logs that will sink at any time he chooses, if, by reason thereof, it will be impossible to run them, or necessarily and seriously obstruct navigation. The court instructed the jury that defendant had a right to run its hard-wood logs, and that, "if they used all reasonable diligence to get their drive down the river, and employed all the men on the same that was practicable, and did not do anything unreasonable to delay the plaintiffs or obstruct the use of the stream, you then cannot take into consideration the fact that the upriver drive overtook them, or was hindered by them, for the lower drive had the right of way, so to speak." He added: "That is, if you find that the defendant was driving the logs in a reasonable manner, put on sufficient men, and using *all diligence to keep the river clear.*"

This instruction might be considered correct were it not for the fact that it is claimed that, owing to the alleged improper attempt to float logs that should have been expected to sink, it was made impossible for any one to keep the river clear. If it is true that a million and a half of

these logs could not be floated down the river, and were not, but sunk, and remained along the stream, the fact that the defendant was making great efforts to bring up its rear, and do an impossible thing, should not preclude plaintiffs from recovering the expense in getting their logs by such obstructions and the jams formed thereby.    In a sense, a man has a right to float logs when he chooses; but it does not follow that he may expect others to suffer because of his unreasonable attempt to float logs which he ought to know will not float.    It was a question for the jury whether it was reasonable to attempt to float the logs.    It is proverbial that "a stern chase is a long one," and significant that defendant's rear was overtaken by a drive which started 100 miles behind, and substantially at the same time.    The fault may have been in the attempt to float logs not in a condition to float; and in such case it was not proper to give the jury to understand that, if the defendant was working all the men practicable, and using all reasonable efforts to clear the stream, the plaintiffs must suffer for its inability to clear the river of logs that it should not have attempted to move at that time.

We think a discussion of other questions raised unnecessary, except that in relation to costs.    Plaintiffs contend that it "appears that their claim was established at more than $100, and was reduced by set-off."    This cannot be said to affirmatively appear from the record.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.