Franklin D. R. HALSTEAD, Plaintiff,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, Defendant and Third-Party Plaintiff,

v.

ANDERSON'S BLACK ROCK, INC., Third-Party Defendant.

Civ. A. No. 1099.

United States District Court
S. D. West Virginia,
at Huntington.

Dec. 14, 1964.

L. Eugene Dickinson, Charleston, W. Va. (Lane & Preiser, Charleston, W. Va., on brief), for plaintiff.

Zane Grey Staker, Williamson, W. Va. (Slaven & Staker, Williamson, W. Va., on brief), for defendant and third-party plaintiff.

Edwin W. Conley, Huntington, W. Va. (Huddleston & Bolen, Huntington, W. Va., on brief), for third-party defendant.

CHRISTIE, District Judge:

This case is before this court pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., upon a motion for summary judgment made by the third-party defendant, Anderson's Black Rock, Inc. (hereinafter referred to as "Black Rock"), on the grounds that the third-party complaint fails to state a claim upon which relief can be granted and that, since Black Rock has made payments to the plaintiff under the applicable provisions of the West Virginia Workmen's Compensation Act, further recovery for the injury is barred. For the reasons hereinafter stated, it is the decision of this Court that the motion should be granted.

On August 9, 1960, plaintiff was engaged in the course of his employment for Standard Asphalt & Tar Company, the predecessor of Black Rock, working inside a Norfolk & Western railroad car containing crushed limestone. The third-party plaintiff will hereinafter be referred to as "N & W" and the third-party defendant as "Black Rock." The gondola car was being unloaded by means of a "clam shell" crane owned and operated by plaintiff's employer, the predecessor of Black Rock. While Halstead was so engaged, the "clam shell" became momentarily caught on a piece of metal which was welded to the side of the car. As a result, the "clam shell" broke loose and crushed Halstead's arm against the side of the car, necessitating its amputation four inches below the elbow.

N & W had carried the crushed limestone from a quarry in Virginia to Black Rock's private siding at Logan, West Virginia. The material was shipped under a standard bill of lading.

Plaintiff in his complaint, originally filed in the Circuit Court of Kanawha County, West Virginia, against N & W alleged that it was negligent (1) in welding the piece of metal to the inside of the railroad car, (2) in allowing the car to be filled with stone to a height above the piece of metal so as to conceal it, and (3) in failing to warn the plaintiff of its presence. Upon removal of this case to this court from the state court, N & W answered denying these acts of negligence and filed a third-party complaint against Black Rock alleging that Black Rock failed to unload its own material in accordance with the provisions of its contract of carriage and certain applicable provisions of the Interstate Commerce Commission statutes, rules, and regulations. The prayer was that Black Rock be made a third-party defendant and adjudged liable to N & W for all sums that may be adjudged against N & W in favor of plaintiff. It should here be noted that N & W negotiated a settlement with plaintiff, after first reaching an understanding with Black Rock that the settlement would be without prejudice to N & W's rights against Black Rock in the third-party proceeding. It should also be noted that there is no question but that plaintiff's injuries were

received in the course of and as a result of his employment and that his employer, Black Rock, was and is insulated against liability to him for negligence by the provisions of the Workmen's Compensation Act. He applied for and has received benefits under that Act.

For the purposes of this motion, Black Rock does not dispute the factual allegations of the third-party complaint, and on this basis both parties, Black Rock and N & W, agree that there are no material factual differences existing precluding a determination of the question upon a motion for summary judgment.

The primary issue would, therefore, seem to be one of whether there is a contract of indemnity between Black Rock and N & W which will allow N & W to recover from or be indemnified by Black Rock. If there is no such contract, recovery against Black Rock is barred by the exclusive liability provisions of the Workmen's Compensation Act. In this regard, Black Rock contends that there is no contract of indemnity between it and N & W that would make it liable for all or any part of the settlement made by N & W with the plaintiff. While N & W concedes, in its brief, the lack of "express language" formulating a contract of indemnity, it, nevertheless, contends that the relationship between N & W and Black Rock, with reference to the shipment, created both a contractual and statutory duty under the law upon the part of Black Rock to perform the unloading operation in a "safe and proper manner," which it failed to perform, thereby causing the accident and the resulting loss. To establish such a duty, N & W relies upon the terms of the bill of lading and the Interstate Commerce Commission tariff regulations applicable thereto, specifically including Uniform Freight Classification 5, Rule Number 27, Section 1. These are all parts of the record in the case.

There is no dispute that the limestone was shipped under a bill of lading and that the bill of lading included, although not expressly written into it, a tariff provision, Rule 27, Sec. 1, Uniform Freight Classification, Page 141, that:

"Owners are required to load into or on cars, freight for forwarding by rail carriers, and to unload from cars freight received by rail carriers, carried at CL ratings or rates, except where tariff of carrier at point of origin or destination of stopover station (as the case may be) provides for loading or unloading of CL freight by carrier."

▪ Primarily, on the basis of General Electric Company v. Moretz, 4th Cir., 270 F.2d 780, N & W contends that the above-quoted tariff provision establishes the requisite contract of indemnity upon which it can recover against Black Rock. In that case, the Fourth Circuit Court of Appeals held that, generally, relevant statutes and regulations existing at the time the contract is made become part of the contract and must be read into it just as if they were expressly referred to or incorporated in its terms. In that case it was held that the tariff provisions plus the regulations issued by the Interstate Commerce Commission, relating to interstate common carriers by motor vehicles, and under the factual situation there appearing, created a contractual relationship between the parties which would allow indemnity. There the rules and regulations were very clear and specific as to the duties imposed and not, as in the instant case, merely a general statement as to which party was required to *load* and *unload* freight received by the rail carrier and carried at carload rates. To more clearly understand the distinction between the two cases, a résumé of the facts in the Moretz case is necessary.

Moretz, a truck driver for Mason & Dixon Lines, an interstate common carrier, sustained personal injuries when his truck overturned while transporting certain heavy equipment belonging to General Electric Company. He brought suit against General Electric on the ground that the accident was caused by its negligence in loading the cargo, in that it was not properly braced, thus permitting it

to shift in the course of the journey thereby causing the truck to overturn. To this charge, General Electric answered denying any negligence, and filed a third-party complaint against Mason & Dixon, contending therein that the accident was the fault of the carrier, and claiming indemnity for any damages which Moretz might recover from it. In response to the third-party complaint, Mason & Dixon answered, in effect denying liability, and moved for dismissal on the ground that it was a subscriber to the Workmen's Compensation Act and that Moretz's right to benefits thereunder was exclusive of all other rights and remedies against his employer. Without passing on the motion, the trial court submitted the issue of General Electric's primary negligence and its liability to Moretz to the jury who returned a verdict in his favor. The court then submitted a special interrogatory to the jury as to whether Mason & Dixon was guilty of negligence which proximately contributed to the accident and the resulting injuries, to which the jury answered in the affirmative.

The Interstate Commerce Commission, acting under the authority of 49 U.S.C.A. § 304, has promulgated certain rules and regulations regarding the transportation of property by motor carriers. These regulations provided, among other things, that "no motor vehicle shall be driven unless the driver thereof shall have satisfied himself that the tailboard or tailgate, tarpaulins, spare tires, and all means of fastening the load are securely in place," C.F.R., 193.9(b).

It was shown that Moretz complied with this regulation and reported to the terminal officials of his employer, Mason & Dixon, that the load was not properly braced, but they did nothing about it. The jury apparently absolved him of any contributory negligence because of the showing that before the truck was turned over to him the doors to the trailer were sealed and that the rules of his employment forbade his breaking same short of destination. As the matter thus stood, both General Electric and Mason & Dixon were assessed with blame insofar as Moretz was concerned.

The next inquiry in the Moretz case concerned the relative rights of the two joint-tortfeasors toward each other. In reaching a determination of this question, the trial court drew on the bill of lading covering the shipment, issued under a published tariff of Southern Motors Carriers, filed with the Interstate Commerce Commission, for the answer. Rule 21 thereof provided that shipments of the size and weight involved were to be loaded by the shipper, and the trial court concluded therefrom that since, under the rule, General Electric was responsible for the loading and had carelessly performed its duty resulting in the driver's injury, it could not demand indemnity from Mason & Dixon.[1] However, in reversing, the appeals court pointed out that these provisions of the tariff told only a "part of the story." It found *other* provisions of the tariff *imposing specific duties* on the carrier of the cargo, upon the basis of which the decision turned. They provided, the court found, that no carrier shall permit any motor vehicle to be driven if the load thereon is so improperly distributed or so inadequately secured as to prevent its safe operation; and that the load shall be properly distributed, and if necessary secured, in order to prevent

---

1. Rule 21: "HEAVY OR BULKY ARTICLES, LOADING OR UNLOADING. Sec. 1. Where an article (or articles) in a single container or shipping form tendered, weighs 500 lbs. or more, or if the greatest dimension exceeds 8 feet or greater and intermediate dimension each exceeds 4 feet, *loading or unloading* shall be performed by the shipper or consignee, as the case may be. If requested, carriers will undertake, in behalf of the shipper or consignee, as the case may be, to employ additional help. No charge will be made for labor performed by the truck driver, but a charge of one dollar and fifty cents ($1.50) per hour or fraction thereof, for each man furnished, other than the truck driver, shall apply from time vehicle arrives at the place of pickup or delivery until shipment is loaded or unloaded, as the case may be."

unsafe shifting of the load or unsafe operation of the vehicle.[2] It found that under these regulatory provisions, forming part of the contract between shipper and carrier, it *clearly* appeared that Mason & Dixon assumed *direct* and *specific* obligation to General Electric to secure the cargo so that it would not shift during movement. On this basis, the court concluded that the contract of Mason & Dixon for the carriage of the shipment embraced the liability to indemnify General Electric in case it suffered loss by the "neglect" of the carrier, and that the exclusive liability provision of the Workmen's Compensation Act did not relieve the carrier of its contractual obligation to indemnify the shipper for loss occasioned by its own negligence. But the court was quick to point out that this result is justified only where the negligent employer is under *express contract* with the third party or bore some *special* relationship to him other than that arising out of participation in the joint wrong to the injured employee.

Thus, it is seen that there is a vast difference between the instant case and the Moretz case. There the court not only had a jury finding that the accident was proximately caused by Mason & Dixon's negligence, but it also had found the existence of an express contractual obligation on the part of Mason & Dixon to safely secure and transport the cargo to its destination and a negligent breach of that obligation. There indemnity was clearly warranted. Here, however, we have an entirely different situation. First, N & W has not the benefit of a jury finding placing primary responsibility for the accident on Black Rock as General Electric had, though concededly this is of minor importance to the ultimate question; and secondly, and vastly more important, the tariffs, statutes and regula-

tions relied upon by N & W to establish a contract of indemnity in its favor against Black Rock are far less specific and far less comprehensive in scope than those in Moretz.

Moreover, the third-party complaint sets out no specific acts of wrongful conduct by Black Rock. It is in the most general terms. It fails to allege any factual matter from which a conclusion of breach of duty could be drawn. It merely charges a general breach of contract by "negligent, improper and unlawful acts." It does not specify what Black Rock did which it should not have done; nor what it failed to do which it should have done. One is left entirely to conjecture and speculation. Only by looking to plaintiff's complaint can one glean how the accident occurred. It places the onus on N & W. It avers that N & W welded a brace inside its gondola and negligently allowed the car to be loaded with limestone so as to conceal the brace and that plaintiff was injured when Black Rock's "clam shell" struck the concealed brace while being used in unloading the limestone. N & W's answer admits welding the brace, admits it allowed the car to be loaded with limestone, and admits it failed to warn plaintiff of the presence of the brace, but it denies any negligence in respect of any of these things. There is no averment in any of the pleadings that unloading limestone from a gondola railroad car by the use of a "clam shell" is not an acceptable and proper practice in the trade or industry, or that the unloading equipment was out of repair or that its operator was unskilled in its use. Though these omissions are not determinative of the ultimate issue, they do point up the factual difference between this case and Moretz and are helpful only in that context.

2. 49 C.F.R. 192.9 "(a) DISTRIBUTION AND SECURING OF LOAD. No motor vehicle shall be driven nor shall any motor carrier permit or require any motor vehicle to be driven if it is loaded, or if the load thereon is so improperly distributed or so inadequately secured, as to prevent its safe operation.

"(b) DOORS TARPAULINS, TAILGATES, AND OTHER EQUIPMENT. No motor vehicles shall be driven unless the tailgate, tailboard, tarpaulins, doors, all equipment and rigging used in the operation of said vehicle, and all means of fastening the load, are securely in place."

Under such circumstances, the Moretz case and the cases cited therein in support thereof, notably Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, afford no basis in law for a recovery under the facts of this case. In the Ryan case, the court found that the stevedoring company's agreement to perform stevedoring operations contained, of its essence, an agreement to indemnify the shipowner of the stevedoring company's service contract to stow the cargo properly and safely was not lived up to. There, under maritime and admiralty law, where the historic rule of divided damages prevails, the court found a contract of indemnity to exist. Here, however, no such rule prevails and N & W concedes, in its brief, the lack of express language creating a contract of indemnity; but it would, nevertheless, fashion one by implication from the relationship of the parties with the aid of the statutes, rules and regulations applicable to rail carriers, hereinabove referred to. This theory necessarily must bear close scrutiny, for to apply it to Black Rock would, in its effect, be forcing Black Rock to pay twice for the same industrial accident. Black Rock having already paid its contribution to the Workmen's Compensation Fund and the plaintiff having received the benefits thereof, before fostering a further economic burden on Black Rock, for the same industrial accident to its employee, its legal responsibility therefor must be made to clearly appear. Under such circumstances, it will not suffice to say, as N & W does here, that Black Rock is due to respond over simply because its employee was injured while engaged in the performance of an essential aspect of its business. That Black Rock had a right to unload the limestone—its own limestone—cannot be gainsaid, for the tariff provision relied upon by N & W as a basis for its right to recover specifically required Black Rock to do so. This tariff provision, unlike the one in Moretz, imposed upon Black Rock no standard of care in the unloading of the limestone, and for aught as appears from the record

it was performing this task in an acceptable and proper manner when the plaintiff received his injury. N & W has understandably failed to point out any specific provision of the tariff that Black Rock breached in the unloading process, because the tariff prescribed no conditions for it to observe or course of conduct for it to follow in this regard.

It will be well to bear in mind that there is another important distinction between the instant case and the Moretz case, in that the correlative positions, rights and duties of the parties are different. There, the shipper, General Electric, was seeking indemnity from the carrier, Mason & Dixon; while here, the carrier, N & W, is seeking indemnity from the shipper, Black Rock. There, Mason & Dixon was contractually engaged in performing a service for General Electric when the injury occurred, under the terms of which engagement the carrier was required to observe certain safety measures which it clearly violated resulting in a loss to the shipper; while here, Black Rock was not engaged to perform any service for N & W and was performing none at the time of injury. Black Rock was merely unloading its own property—limestone—uninhibited in manner or means by any safety or other conditions imposed upon it by N & W. As correctly pointed out by the court in the Moretz case, if in the process of performing its contract of service, a carrier causes the shipper to incur a loss, then the essence of the contract is an indemnification obligation of the carrier to make the shipper whole; whereas, in the instant case, Black Rock was under no contract to perform any service for the carrier, and was not performing any when the accident occurred; but, instead, it was simply unloading its own freight. The "service aspect" is what the Ryan doctrine is founded on, and it was so emphasized in Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.

Thus, we think it clear that, since there is not shown to exist here an express contractual obligation on the part of Black

Rock to indemnify N & W, a recovery is not indicated, and this would even be true if active-passive or primary-secondary negligence by Black Rock, as those terms are defined and differentiated by Judge Sopher in United States v. Savage Truck Lines, 209 F.2d 442 (4th Cir. 1953) 44 A.L.R.2d 984, were conceded.

With reference to implied indemnity, an oft-cited case is Slattery v. Marra Bros., 186 F.2d 134 (2d Cir. 1951), which affirmed the dismissal of an amended third-party complaint that sought indemnity from an employer shielded by the exclusive liability provisions of the New Jersey Workmen's Compensation statute. The court, in an opinion by Judge Learned Hand, recognized common law indemnity, but concluded:

> "So far as we can see therefore there is no body of sure authority for saying that differences in the degrees of fault between two tortfeasors will without more strip one of them, if he is an employer, of the protection of a compensation act; and we are at a loss to see any tenable principle which can support such a result."

In the Tenth Circuit, in Hill Lines, Inc. v. Pittsburgh Plate Glass Co., 222 F.2d 854 (1955), one Sanchez, an employee of the third-party defendant Pittsburgh, was injured in unloading a truck owned by the third-party plaintiff, Hill Lines. The employee had received Workmen's Compensation under the New Mexico Compensation Act, and then brought an action against the truck owner for, among other things, negligence in the maintenance of its truck and contents. The truck owner filed a third-party action against the employer, seeking indemnity for any sums it might have to pay under the original action, claiming that Interstate Commerce Commission rules, regulations and tariff provisions created a special legal relationship whereby the employer owed an independent duty to the truck owner "to unload the truck in a careful and prudent manner" and alleging that the employee's injuries had been caused by negligence

of the employer's agents, precisely the same claim as is made here, axcept that case involved a truck rather than a railroad car. In affirming the district court, dismissing the third-party complaint, the court of appeals, speaking through Judge Murrah, had this to say:

> "The ultimate question, then, is whether the pleaded I. C. C. rules, regulations and tariffs create an independent liability in Pittsburgh to indemnify Hill Lines quite apart from any joint liability they might have toward Sanchez on account of his injuries. In the original complaint Sanchez alleged active and independent negligence on the part of Hill Lines. In its third-party complaint Hill Lines alleged in substance and effect that the I. C. C. rules, regulations and tariffs placed sole responsibility in Pittsburgh for any negligence in unloading the truck resulting in injuries to Sanchez; that Pittsburgh owed a duty both to Sanchez and Hill Lines to unload the truck in a prudent manner.

> "The most that can be said of Hill Lines' theory is that by virtue of the contractual relationship between Hill Lines and Pittsburgh with respect to unloading the truck, Pittsburgh became solely liable to its employee for his injuries. The answer is that if Pittsburgh is either solely or jointly liable for those injuries, its liability is limited by the workmen's compensation act. The result is the same. In either event, the workmen's compensation law operates to insulate Pittsburgh from liability to Hill Lines."

In United Air Lines, Inc. v. Wiener, 335 F.2d 379, 402–404 (9th Cir. 1964), the Federal Employees' Compensation Act, 5 U.S.C. § 757(b), was held to preclude an otherwise existing right of common law indemnity with respect to government employees killed in mid-air plane collision because of the exclusive liability provision of the compensation act, which is similar in effect to the West Virginia

Act. This view is in line with numerous cases. See American Mutual Liability Ins. Co. v. Matthews, 182 F.2d 322 (2d Cir. 1950); Lo Bue v. United States, 188 F.2d 800 (2d Cir. 1951); Peak Drilling Co. v. Halliburton Oil Well Cement Co., 215 F.2d 368 (10th Cir. 1954); Baltimore Transit Co. v. State, to Use of Schriefer, 183 Md. 674, 39 A.2d 858, 861, 156 A.L.R. 460 (1964); Hunsucker v. High Point Bending & Chair Co., 237 N.C. 559, 75 S.E.2d 768 (1953); Crawford v. Pope & Talbot, 206 F.2d 784 (3d Cir. 1953); American Radiator & Standard Sanitary Corp. v. Mark Engineering Co., 230 Md. 584, 187 A.2d 864 (1963).

■ These authorities demonstrate, we believe, that, since N & W has failed to show the requisite requirements for a contract of indemnity, Black Rock's motion for summary judgment is well taken; but if it were otherwise, a trial could not be had on the issue of Black Rock's active-passive or primary-secondary negligence, because that type of indemnity case is barred by the exclusive liability provisions of the Workmen's Compensation Act. Fully recognizing this, astute counsel for N & W, in their brief, say that they base their client's right to recover upon "common law indemnity" and more specifically upon the doctrine of "implied agreement to indemnity" because of the contractual relationship between N & W and Black Rock which imposed a duty on Black Rock to unload the limestone in a workmanlike manner. To sustain this theory, we are referred to applicable tariff rules and regulations approved by the Interstate Commerce Commission and contained in Uniform Freight Classification 5, the specific rule relied upon being Rule 27, hereinbefore quoted. Since these tariff rules and regulations have the force and effect of law, their construction is a question of law for the court, Union Pac. Ry. Co. v. Ore.-Ida. Potato Products, 9 Cir., 252 F.2d 505; Armour & Co. v. Chicago M., St. P. & Pac. R. Co., 7 Cir., 188 F.2d 603, certiorari denied 342 U.S. 860, 72 S.Ct. 87, 96 L.Ed. 647, and in determining their meaning and effect in this case, since Black Rock had no hand in their preparation, if they are found to be susceptible of different interpretations, the construction most favorable to Black Rock must be adopted. Southern Pacific Co. v. Lothrop, 15 F.2d 486 (9th Cir. 1926). However, we have no need to lean on this rule of construction here, for we find no language in the tariff which could be reasonably interpreted to impose upon a consignee an indemnity liability to the carrier for an accidental injury to consignee's employee where such employee is covered by workmen's compensation and where, as in West Virginia, the Act insulates the employer from common law liability therefor. Having reached this ultimate conclusion, the Court must necessarily rule out the existence of an enforceable contract of indemnity between N & W and Black Rock. Consequently, there is no triable issue left, and Black Rock is accordingly entitled to summary judgment.

Summary judgment granted; third-party complaint dismissed.