NASH *v.* SEARS, ROEBUCK & COMPANY.

1. NEGLIGENCE — STOREKEEPER — SECURITY GUARD — CONTROL — JOINT SERVANT.

　　Refusal to direct a verdict for cross-plaintiff on a cross-claim by a department store against a private protection service for negligence in furnishing of a security guard who assaulted a customer, and submission of the claim to the jury, was not error where the record showed that the security guard was the servant of both the department store and the protection service and therefore raised the question whether the department store exercised reasonable care for the protection of others in view of the control it had over the guard's activities.

2. CONTRACTS—ORAL CONTRACTS—CONFLICTING TESTIMONY—QUESTION OF FACT.

　　Provisions of an oral contract between a department store and a protection service as to control of security guards furnished by the protection service and instructions concerning arrest of customers were properly submitted to the jury for factual determination where conflicting testimony was presented as to the scope and provisions of the oral agreement.

3. CONTRACTS—EMPLOYMENT—SKILL.

　　Every contract of employment includes an obligation, whether express or implied, to perform in a diligent and reasonably skillful workmanlike manner, with the test of skill and efficiency being that degree of skill, efficiency, and knowledge ordinarily possessed by those employed in that trade or profession.

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence §§ 94, 131–138.
[2] 17 Am Jur 2d, Contracts § 245.
　　38 Am Jur, Negligence §§ 344–361.
[3] 35 Am Jur, Master and Servant §§ 41, 101–103.
[4] 41 Am Jur 2d, Independent Contractors §§ 27, 37, 48.
[5] 17 Am Jur 2d, Contracts § 257.

4. CONTRACTS—INDEPENDENT CONTRACTOR—EMPLOYER—SKILL—CON-
STRUCTION.

An independent contractor, undertaking to discharge a contractual
duty to his employer, is bound to proceed with the skill, dil-
igence and workmanlike manner required of any employee
under the common-law rule.

5. CONTRACTS — TERMS — SKILL — INSTRUCTIONS TO JURY — CROSS-
CLAIM.

Instruction by the trial judge that the relationship between a
department store and a protection service was a contract and
that it was for the jury to determine, on the department
store's cross-claim, whether it was agreed in the contract that
only qualified guards would be furnished to the department
store, was error because it allowed the jury to determine
the existence of a contract term which is supplied in law if not
an express part of the contract.

Appeal from Court of Appeals, Division 1, Lesin-
ski, C. J., and Burns and Levin, JJ., affirming
Wayne, Thomas E. Brennan, J. Submitted Novem-
ber 6, 1969. (Calendar No. 25, Docket No. 52,250.)
Decided March 9, 1970.

12 Mich App 553 reversed in part.

Complaint by Mary Lee Nash and Dan Nash
against Sears, Roebuck & Company, a New York
Corporation, Heidt's Protective Service, Inc., a
Michigan corporation, and Art Keolian, for assault
and false arrest of Mary Lee Nash and loss of con-
sortium of Dan Nash. Cross-complaint by Sears,
Roebuck & Company against Heidt's Protective
Service, Inc. Judgment for plaintiffs against all
three defendants. Judgment of no cause of action
on Sears' cross-complaint. Defendants appealed to
the Court of Appeals. Affirmed. Defendant Sears
appeals as to the disposition of its cross-claim.
Reversed and remanded for a new trial on the
cross-claim.

*Bodman, Longley, Bogle, Armstrong & Dahling*
(*Arnstein, Gluck, Weitzenfeld & Minow,* of counsel),
for Sears, Roebuck & Company.

T. M. KAVANAGH, J. On September 4, 1962, a
uniformed guard, defendant Keolian, in the employ
of defendant Heidt's Protective Service, Inc., appre-
hended plaintiff, Mary Nash, as she was leaving the
store of defendant Sears, Roebuck & Company.
Keolian purportedly acted upon the information of
a Sears' saleslady, who allegedly witnessed a woman,
identified by her as plaintiff, shoplifting. When
Keolian confronted plaintiff and requested her to
accompany him to the store, she refused and started
to walk away. Keolian shoved her to the ground,
straddled her body, and pinned her arms above her
head. When the police arrived, both Keolian and
Mrs. Nash were taken to the station, and subsequent
search and investigation proved the shoplifting
charge to be without foundation.

Plaintiffs sued Sears, Heidt's, and Keolian on the
theories of false arrest, false imprisonment, and
assault and battery. Sears and Heidt's filed cross-
claims respectively seeking indemnification should
plaintiff recover. Keolian filed no appearance or
answer and default was entered against him.

The trial judge directed a verdict for plaintiffs
against Sears and Keolian, but denied motion of
Sears for a directed verdict on its cross-claim
against Heidt's. At the conclusion of the trial, the
jury returned a verdict for plaintiffs against all
three defendants and returned verdicts of no cause
on the respective cross-claims of Sears and Heidt's.

The Court of Appeals unanimously affirmed the
jury's verdict against all three defendants on the
plaintiffs' claim and the verdict of no cause on
Heidt's cross-claim. Judge LEVIN dissented for the

reason the trial judge erroneously charged the jury, further discussed *infra,* and would have reversed and remanded for new trial as to Sears on its cross-claim against Heidt's.  12 Mich App 553.

Leave to appeal was granted by this Court (381 Mich 800), limited to the questions presented by the cross-claim of Sears against Heidt's.  Sears, having filed the only brief with this Court in this cause, frames the issues as follows:

(1) Did the trial court err in refusing to direct a verdict for Sears on its cross-claim against Heidt's?

(2) Did the trial court err in charging the jury that it should decide the question of whether a contract for guard services implied that the services would be performed by a qualified guard?

Addressing itself to the first issue, Sears argues that Heidt's is as a matter of law liable either on a contract theory—"that where one contracts to furnish services to another the law implies that the services will be performed by one qualified to act and performed in a reasonable and proper manner" —or on a negligence theory—"that an agent or independent contractor is liable to his principal or general contractor in tort for negligence proximately causing damage."

Although we accept Sears' generally-cited authority supporting the negligence theory, on the record before us we are not inclined to hold that there were no such issues of fact to be submitted to the jury or that as a matter of law Sears was not guilty of any proximately causative negligence.  *Cochran* v. *Pinto* (1952), 333 Mich 91; *Gerard* v. *Small* (1969), 382 Mich 327.  Rather, we accept Judge LEVIN's view of the facts in this case as presenting a submissible jury question (pp 569, 570):

"Keolian was given detailed instructions by both Heidt's and Sears concerning the performance of his duties for Sears. Both retained a measure of control over him and the right to supervise, direct and discharge him from further service for Sears. One of Heidt's witnesses testified it had the right to pull a guard assigned to Sears off the job while he was at Sears and to replace him with someone else. Heidt's retained the right to continue to supervise Keolian to the extent it chose to do so. Keolian's services for Sears did not involve an abandonment of his service for Heidt's, and at the time of the incident Keolian had not ceased to be one of Heidt's servants.

"Keolian worked side-by-side with and for Sears' employees. He was expected to respond to intelligence received from other Sears' employees, even though he had been instructed not to arrest unless he himself witnessed a shoplifting incident. Keolian was on Sears' premises as an integral part of the complex of employees whose combined services make it possible to operate a modern department store in a major metropolis. He was Sears' servant and Sears together with Heidt's was responsible for his torts, intentional as well as negligent."

Holding from this record that Keolian was the servant of both Sears and Heidt's,[1] it is not necessary to either carve out another exception to the general rule of vicarious liability, viz., nondelegable duty,[2] or to discuss the factually inapplicable dis-

---

[1] See 2 Restatement, Agency, §§ 226, 227, pp 498–504; cf. *Joslin* v. *Grand Rapids Ice Company* (1883), 50 Mich 516; *Foster* v. *Grand Rapids R. Co.* (1905), 140 Mich 689; *Janik* v. *Ford Motor Co.* (1914), 180 Mich 557. See, also, an excellent concise analysis of the various theories on the "loaned servant" problem in 2 Harper & James, Torts, § 26.11, p 1395, at 1398, footnote 14.

[2] The general rule prevailing in some of our sister states is that a defendant cannot escape liability on the ground that the false arrest had been caused by an employee of an independent contractor on the theory of a "nondelegable" duty. See 92 ALR2d 15, 61–65, and authorities therein cited. Although these foreign authorities are persuasive and the matter is of the first impression in this state, we do not consider this case to be the proper decisional vehicle—either

tinction between active *vis a vis* passive tortfeasors.[3]
Upon this record it is clear that Sears was required
to exercise reasonable care for the protection of
others in view of the control which Sears exercised
over the guard's activities, and this issue was prop-
erly submitted to the jury. See *Bissell* v. *Ford*
(1913), 176 Mich 64, citing *Wright* v. *Big Rapids
Door & Blind Manufacturing Co.* (1900), 124 Mich
91; *Larsen* v. *Home Telephone Co.* (1911), 164 Mich
295; *Ripley* v. *Priest* (1912), 169 Mich 383; see, also,
Prosser, Torts (3d Ed), p 481; 2 Harper & James,
Torts, § 26.11, p 1395, at 1399, citing as authority
*Black Springs Lumber Company* v. *Palmer* (1936),
192 Ark 1032 (96 SW2d 469); *Burlingham* v. *Gray*
(1943), 22 Cal 2d 87 (137 P2d 9); *Scorpion* v. *Amer-
ican-Republican, Inc.* (1944), 131 Conn 42 (37 A2d
802); *Cochran* v. *Pinto* (1952), 333 Mich 91; *Süde-
kum* v. *Animal Rescue League of Pittsburg* (1946),
353 Pa 408 (45 A2d 59).

Next, Sears contends that on a contract theory the
trial court should have directed a verdict on its
cross-claim against Heidt's.

In view of the conflicting testimony presented by
this record, the factual determination of the scope
and provisions of the oral contract—particularly as
it concerns the issues of "control" of security guards
and the "no arrest" instructions—was properly left
to the province of the jury. *Shannon* v. *Polish
Falcons of America Nest No. 86* (1957), 348 Mich
92; *Reinhard* v. *Grand Rapids School Equipment Co.*
(1920), 211 Mich 165; *Bellows* v. *Crane Lumber Co.*

---

upon the presented facts or the argued theories—to adopt such a
rule. See Prosser, Torts (3d Ed), p 480, at 481, footnotes 94, 95.

[3] Sears' reliance upon *Township of Hart* v. *Noret* (1916), 191 Mich
427, and *Husted* v. *Consumers Power Company* (1965), 376 Mich
41, is misplaced in that it begs the primary question of the tortious
conduct of the joint tortfeasors irrespective of whether or not that
conduct may be indemnified. See *Weyerhaeuser Steamship Co.* v.
*Nacirema Operating Co., Inc.* (1958), 355 US 563 (78 S Ct 438,
2 L Ed 2d 491).

(1901), 126 Mich 476; *Jenness* v. *Shaw* (1876), 35 Mich 20. The mere fact that the contractual relationship involved an independent contractor and the employer, neither of whom were principal plaintiffs, does not alter the allocation of function between court and jury from that prescribed in any other case where a contract is to be construed. See *Braxton* v. *Mendelson* (1922), 233 NY 122 (135 NE 198).

The trial court committed no error in submitting these controverted factual questions to the jury.

The trial judge, however, went further and instructed the jury that:

"This relationship between Sears and Heidt's is a contract, and one of the things for you to determine under the cross-claim of Sears is whether one of the things agreed to under that contract was whether a qualified guard was to be sent over."

In this respect the trial court erred.

Every contract of employment includes an obligation, whether express or implied, to perform in a diligent and reasonably skillful workmanlike manner. The general rule is fully stated in 17 Am Jur 2d, Contracts, § 371, pp 814, 815, as follows:

"As a general rule, there is implied in every contract for work or services a duty to perform it skilfully, carefully, diligently, and in a workmanlike manner. Moreover, a contracting party may be bound by the terms of the contract to perform it in a good and workmanlike manner.

"With respect to the skill required of a person who is to render services, it is a well-settled rule that the standard of comparison or test of efficiency is that degree of skill, efficiency, and knowledge which is possessed by those of ordinary skill, competency, and standing in the particular trade or

business for which he is employed. Where the contract does not provide for a degree of skill higher than this, none can be required. Where skill as well as care is required in performing the undertaking, and where the party purports to have skill in the business and he undertakes for hire, he is bound to exercise due and ordinary skill or, in other words, to perform in a workmanlike manner. In cases of this sort he must be understood to have engaged to use a degree of diligence and attention and skill adequate to the performance of his undertaking. It seems, however, that he is not liable for an error due to an honest mistake of judgment, and not to gross ignorance. Nor, in the absence of an express provision to that effect, does he become a guarantor of the results.

"Failure to comply with the implied duty to perform in a skilful and workmanlike manner may not only defeat recovery but may entitle the other party to damages resulting from the unskilful and unworkmanlike performance."

See *Clark* v. *Dalman* (1967), 379 Mich 251; *Waggoner* v. *Midwestern Development, Inc.* (1967), 83 SD 57 (154 NW2d 803); 25 ALR2d 1085; see, also, 9 Williston, Contracts (3d Ed), § 1012C, p 38, and authorities cited therein.

An independent contractor, undertaking to discharge a contractual duty to his employer, is bound to proceed with skill, diligence and in a workmanlike manner, as is any employee under the common-law rule above quoted. See, *e.g., Chapel* v. *Clark* (1898), 117 Mich 638. This necessary implication of any contract of employment, if not expressly provided for by the parties, will be supplied in law by construction. *Draper* v. *Nelson* (1931), 254 Mich 380; *Nichols* v. *Seaks* (1941), 296 Mich 154; 6 Michigan Law & Practice, Contracts, § 141, pp 407, 408.

We hold that the trial judge committed reversible error when he instructed the jury that they were to

determine whether Heidt's obligated itself to send over a qualified guard. The judgment is reversed and the cause remanded for a new trial as to Sears' cross-claim against Heidt's.

Costs shall abide final disposition.

DETHMERS, KELLY, BLACK, ADAMS, and T. G KAVANAGH, JJ., concurred with T. M. KAVANAGH, J.

T. E. BRENNAN, C. J., did not sit in this case.