INGRAM v INTERSTATE MOTOR FREIGHT SYSTEMS

Docket Nos. 51796, 53263. Submitted November 4, 1981, at Detroit.— Decided April 22, 1982. Leave to appeal applied for.

Arthur W. Ingram and Louise Ingram brought an action against Interstate Motor Freight Systems for damages resulting from injuries received by Arthur W. Ingram while loading a tractor and trailer belonging to Interstate while in the performance of his employment with Ajax Rolled Ring Company. Interstate filed a third-party complaint against Ajax alleging breach of contract on a theory of breach of an implied warranty of workmanlike service and also alleging an implied indemnity agreement. Ajax filed a motion for summary judgment claiming Interstate had failed to state a cause of action upon which relief could be granted and that there was no genuine issue of material fact regarding Ajax's liability. The motion was denied, Wayne Circuit Court, Joseph A. Moynihan, Jr., J. Ajax appeals, by leave granted, that order in Docket No. 51796. Interstate then amended its third-party complaint requesting common-law comparative indemnity from Ajax. Ajax then moved for summary judgment based on failure to state a claim upon which relief could be granted. The motion was granted, Wayne Circuit Court, Harold Hood, J. Interstate appeals that judgment in Docket No. 53263. The Court of Appeals consolidated the appeals. *Held:*

2. The Worker's Disability Compensation Act does not preclude Interstate's action for contractual or common-law indemnity from Ajax.

2. Interstate cannot prevail on its theory of liability based upon breach of an implied warranty of workmanlike service.

REFERENCES FOR POINTS IN HEADNOTES
[1] 18 Am Jur 2d, Contribution § 48.
  41 Am Jur 2d, Indemnity §§ 20, 21, 24.
  82 Am Jur 2d, Workmen's Compensation §§ 426, 427.
  Modern status of effect of state workmen's compensation act on right of third-person tortfeasor to contribution or indemnification from employer of injured or killed workman. 100 ALR3d 350.
[2] 13 Am Jur 2d, Building and Construction Contracts §§ 27, 28, 141.
[3] 41 Am Jur 2d, Indemnity § 20.

The "service aspect" necessary for such an action is lacking here since the function being performed by the injured Ajax employee was not a service to Interstate under the contract between Interstate and Ajax. The trial court, therefore, erred in denying Ajax's motion for summary judgment.

3. Indemnification of Interstate by Ajax based on comparative common-law indemnity is not available under Michigan law.

The denial of the summary judgment motion in Docket No. 51796 is reversed and the grant of the summary judgment motion in Docket No. 53263 is affirmed.

1. Workers' Compensation — Indemnity — Contribution.

The Worker's Disability Compensation Act would not preclude an action for indemnification, either contractual or common law, by an alleged tortfeasor from the employer of the party who was injured, even though the act precludes contribution (MCL 418.101 et seq.; MSA 17.237[101] et seq.).

2. Indemnity — Contracts — Implied Warranties.

A tortfeasor may not receive indemnification on a theory of liability based upon breach of an implied warranty of workmanlike service where the party from whom indemnification is sought was not, at the time of injury, performing a service for the party seeking indemnification pursuant to a contract which required that service.

3. Indemnity — Torts — Comparative Fault.

Indemnification of one tortfeasor by another based on comparative common-law indemnity is not available under Michigan law.

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Roger F. Wardle* and *Cynthia Cooper Adkison*), for Interstate Motor Freight Systems.

*Conklin, Maloney, Loesch & Caravas* and *Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *John P. Jacobs* and *Raymond W. Morganti*), of counsel, for Ajax Rolled Ring Company.

Before: J. H. GILLIS, P.J., and BEASLEY and P. E. DEEGAN,* JJ.

PER CURIAM. On October 13, 1975, a tractor and trailer owned by Interstate Motor Freight Systems (Interstate) and driven by its employee, Ernest Cesarone, was backed up to the freight dock of Ajax Rolled Ring Company (Ajax) to be loaded with a shipment of Ajax's steel rings. A metal dock plate was used to facilitate the loading from the freight dock to the bed of the trailer. Plaintiff, an employee of Ajax, lifted several rings of steel with a hi-lo and began to load the rings onto the trailer by driving the hi-lo across the dock plate to the bed of the trailer. While the hi-lo was on the dock plate, the truck began to pull away from the dock. Plaintiff and the hi-lo landed in the loading well, causing injury to plaintiff.

Interstate's driver, Cesarone, testified by deposition that when he backed the trailer to the dock plate the trailer was not flush with the dock plate; that the dock plate was two to four inches above the lip of the trailer; and that when he stepped on the dock plate it did not go down with his weight. Cesarone testified that he told William Peet, another Ajax employee who assisted plaintiff in loading, that the trailer was not flush with the dock and that he was going to straighten it out. According to Cesarone, Peet nodded his head. Cesarone testified that, after the accident, he approached Peet and asked him why plaintiff had been allowed to load the steel when Peet knew that Cesarone was going to straighten the trailer. According to Cesarone, Peet stated that he had been wearing ear plugs and had not heard Cesarone, even though he had nodded. Peet testified that

* Circuit judge, sitting on the Court of Appeals by assignment.

Cesarone did not tell him he was going to move the trailer before the accident and did not recall telling anyone that he had been wearing ear plugs. Cesarone, plaintiff and Peet all testified that there were no specific safety procedures in effect at Ajax at the time of the accident nor were any special safety devices required to be used.

Plaintiff brought suit against Interstate, alleging that his injury occurred as a result of the negligence of Interstate's employee.

Interstate filed a third-party complaint against Ajax alleging a contract between Ajax and Interstate pursuant to which Interstate agreed to pick up Ajax's products on Ajax's premises. The third-party complaint further alleged that, pursuant to the contract, Ajax either expressly or impliedly agreed to: (a) provide a safe place for the loading and unloading of Interstate's vehicles; (b) provide proper and necessary safety equipment for the loading and unloading of Interstate's vehicles; (c) provide properly trained personnel who were cognizant of the hazards attendant to the loading and unloading of Interstate's vehicles; (d) provide for utilization of reasonably safe procedures by its employees during the loading and unloading of Interstate's vehicles. The third-party complaint alleged that Ajax breached that contract by failing to provide proper safety measures and that, as a consequence of that breach, plaintiff suffered personal injuries for which he sought redress against Interstate. The third-party complaint sought to recover from Ajax, for their breach of contract, any sums paid by Interstate to plaintiff pursuant to the principal action. An amendment to the third-party complaint added an allegation that when Ajax contracted with Interstate, as described above, it impliedly agreed to indemnify Interstate if it breached any of the duties outlined above.

Ajax filed a motion for summary judgment claiming that Interstate had failed to state a cause of action upon which relief could be granted and that there was no genuine issue of material fact regarding Ajax's liability. The motion was denied. Ajax appeals that decision in Docket No. 51796.

Interstate was then permitted to file a second amended third-party complaint requesting common-law indemnity from Ajax in an amount equal to the percentage of damages allocable to Ajax's breach of the duties owed to Interstate, *i.e.,* comparative indemnity.

Ajax moved for summary judgment based on failure to state a claim upon which relief can be granted. This motion was granted by the trial judge. Interstate appeals that decision in Docket No. 53263.

Before proceeding, we note here that neither of the claims alleged are barred by provisions of the Worker's Disability Compensation Act, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.* Although the act would preclude an action for contribution from Ajax, indemnity, either contractual or common law, is permissible. *McLouth Steel Corp v A E Anderson Construction Corp,* 48 Mich App 424; 210 NW2d 488 (1973).

We initially address Ajax's appeal in Docket No. 51796. Ajax presents a number of arguments, only one of which need be addressed: whether or not Interstate has alleged a colorable claim for breach of an implied warranty of workmanlike service.

The groundwork for this theory of liability was laid in *Ryan Stevedoring Co, Inc v Pan-Atlantic Steamship Corp,* 350 US 124; 76 S Ct 232; 100 L Ed 133 (1956). In *Ryan,* a stevedoring company contracted to perform all the stevedoring operations required of a certain shipowner. In perfor-

mance of this contract the stevedores loaded the ship in South Carolina with mixed cargo but did not properly secure a portion of the cargo. A few days later at a pier in Brooklyn a stevedore was injured while unloading the cargo.

The stevedore company's insurance carrier paid compensation under the Longshoreman's and Harbor Worker's Compensation Act. As permitted by the act the injured employee sued the shipowner on theories of unseaworthiness and negligence. The shipowner filed a third-party complaint against the stevedore company for indemnity, which complaint was dismissed by the trial judge. The appeal from this dismissal reached the United States Supreme Court.

The Supreme Court held that the stevedore company had breached its warranty of workmanlike service. The Court explained that the stevedore company's agreement to perform all of the shipowner's stevedoring operations necessarily included an obligation to perform the work properly and safely. The Court compared the warranty of workmanlike service to a manufacturer's warranty:

"The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. *That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken.* This obligation is not a quasicontractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. *It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manu-*

*factured product."* 350 US 124, 133-134. (Emphasis supplied.)

In an earlier part of the opinion the Court noted that indemnity for improper performance is part of the *quid pro quo* of the agreement.

"In the instant case, the *stevedoring contractor,* however, has received a contractual *quid pro quo* from the shipowner for assuming responsibility for the proper performance of all of the latter's stevedoring requirements, including the discharge of foreseeable damages resulting to the shipowner from the contractor's improper performance of those requirements." 350 US 124, 129, fn 3. (Emphasis in original.)

Maritime cases subsequent to *Ryan* further developed and applied this theory of breach of warranty of workmanlike service. See *Weyerhaeuser Steamship Co v Nacirema Operating Co,* 355 US 563; 78 S Ct 438; 2 L Ed 2d 491 (1958); *Waterman Steamship Corp v Dugan & McNamara, Inc,* 364 US 421; 81 S Ct 200; 5 L Ed 2d 169 (1960); *Crumady v Joachim Hendrik Fisser,* 358 US 423; 79 S Ct 445; 3 L Ed 2d 413 (1959); *Italia Societa per Azioni di Navagazione v Oregon Stevedoring Co, Inc,* 376 US 315; 84 S Ct 748; 11 L Ed 2d 732 (1964).

Once firmly established, it was not long before this theory of indemnity was being applied in other areas of the law. In *Diamond State Telephone Co v University of Delaware,* 269 A2d 52 (Del, 1970), the University of Delaware hired Diamond State Telephone to run a cable into one of the university buildings. While performing this task, one of Diamond's employees was electrocuted in a manhole containing electrical conduits owned by the university. Subsequently, suit was brought against the university alleging negligence in the

maintenance of a dangerous manhole. In turn, the university brought a third-party complaint against Diamond for breach of its obligation to perform the work in a careful and prudent manner. The action was allowed by the Delaware Supreme Court.

The warranty of workmanlike performance has also been applied in a contract between a principal and its contractor, *Moroni v Intrusion-Prepakt, Inc,* 24 Ill App 2d 534; 165 NE2d 346 (1960), and in a contract to furnish labor to wash walls, equipment and floors, *Blackford v Sioux City Dressed Pork, Inc,* 254 Iowa 845; 118 NW2d 559 (1962).

*Pontious v E W Bliss Co,* 102 Mich App 718; 302 NW2d 293 (1981), is a recent Michigan case in which the theory was applied. In *Pontious,* Tepco, Inc. (Tepco) had contracted for D.M.P. Manufacturing Co. (DMP) to design and build tooling parts for Tepco. The primary plaintiff, Pontious, was employed by DMP and was injured while operating a press for his employer. Pontious brought suit against Tepco to recover damages for the injuries. Tepco filed a third-party complaint against DMP which included a theory of liability based upon breach of an implied warranty to execute its contractual duties in a safe and workmanlike manner.

This Court reversed the trial court's grant of DMP's motion for summary judgment, ruling that Tepco's theory was a proper claim for contract damages. In so ruling, the Court did not rely on *Ryan* or its progeny. Rather, it cited *Nash v Sears, Roebuck & Co,* 383 Mich 136; 174 NW2d 818 (1970), in which the Michigan Supreme Court stated:

"Every contract of employment includes an obligation, whether express or implied, to perform in a dili-

gent and reasonably skillful workmanlike manner. The general rule is fully stated in 17 Am Jur 2d, Contracts, § 371, pp 814, 815, as follows:

" 'As a general rule, there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner. Moreover, a contracting party may be bound by the terms of the contract to perform it in a good and workmanlike manner.' " *Nash v Sears, Roebuck & Co,* 383 Mich 136, 142.

Interstate argues that these cases support its claim for indemnity from Ajax. We do not agree.

Whether the theory of warranty of workmanlike service is traced to *Ryan* or to *Nash,* the service aspect is an inescapable part of the formula. In each case discussed above the party from whom indemnity was sought was, at the time of the injury, performing a service for the party seeking indemnity pursuant to a contract which required that service.

In his treatise on workers' compensation law Larson discussed *Ryan* at length and explained why the service aspect is such a fundamental part of an action for breach of warranty of workmanlike service:

"* * * [E]ven if there is a contract between employer and third party, and even if this contract contains an implied obligation to perform certain functions with care because of incorporation by reference of Interstate Commerce Commission regulations or otherwise, this still does not generate a *Ryan*-type independent duty unless the functions being performed were a service to the third person under the contract. *The analogy to a duty running with a manufacturer's sale of goods, invoked in the* Ryan *opinion itself, and again in* Crumady *is clear, with services being substituted for goods. If no services are passing from the employer to the third person under the contract, the analogy breaks*

*down."* 2A Larson, Workmen's Compensation Law, § 76.43(a), p 14-350. (Emphasis supplied.)

In *Halstead v Norfolk & Western R Co,* 236 F Supp 182 (SD W Va, 1964), *aff'd* 350 F2d 917 (CA 4, 1965), indemnity was sought under facts similar to those of the instant case. The plaintiff, an employee of Anderson's Black Rock, Inc. (Black Rock), was working inside a Norfolk & Western (N & W) railroad car containing crushed limestone. The car was being unloaded by a crane owned and operated by Black Rock. The limestone was Black Rock's own material which had been carried by N & W under a standard bill of lading. Plaintiff's arm was crushed when the crane caught on a piece of metal which was welded to the side of the car.

The plaintiff filed suit against N & W. N & W filed a third-party complaint against Black Rock claiming that Black Rock had breached its implied contractual duty to the railway to unload the car of limestone in a safe and non-negligent manner. Black Rock's motion for summary judgment was granted on the ground that, *inter alia,* Black Rock was performing no service for N & W:

"* * * [H]ere, Black Rock was not engaged to perform any service for N & W and was performing none at the time of injury. Black Rock was merely unloading its own property—limestone—uninhibited in manner or means by any safety or other conditions imposed upon it by N & W. * * * The 'service aspect' is what the *Ryan* doctrine is founded on, and it was so emphasized in *Crumady v Joachim Hendrik Fisser,* 358 US 423; 79 S Ct 445; 3 L Ed 2d 413." 236 F Supp 182, 187.

As in *Halstead,* the "service aspect" is lacking in the instant case. Ajax was not performing a service for Interstate at the time its employee was

injured. Rather, Ajax was loading its own goods onto Interstate's truck so that Interstate could perform a service for Ajax. Whatever obligations may have arisen out of Ajax's loading operations, none of these obligations flowed to Interstate as a part of the contract between them.

Under these circumstances, Interstate cannot prevail on a theory of liability based upon breach of an implied warranty of workmanlike service. Accordingly, the trial court erred in denying Ajax's motion for summary judgment.

We next turn to Interstate's appeal from the summary judgment granted to Ajax on count II of Interstate's second amended third-party complaint. Interstate seeks to hold Ajax liable on a "comparative common-law indemnity" theory. Three cases are cited from other jurisdictions in which the theory of common-law indemnity based upon relative fault has been adopted. *Dole v Dow Chemical Co,* 30 NY2d 143; 282 NE2d 288; 331 NYS2d 382 (1972); *American Motorcycle Ass'n v Superior Court of Los Angeles County,* 20 Cal 3d 578; 578 P2d 899; 146 Cal Rptr 182 (1978); *Missouri Pacific R Co v Whitehead & Kales Co,* 566 SW2d 466 (Mo, 1978).

This Court recently declined the invitation to adopt comparative common-law indemnity in Michigan. *Swindlehurst v Resistance Welder Corp,* 110 Mich App 693; 313 NW2d 191 (1981). We again do so here. The policy considerations and collateral effects presented by a theory of comparative indemnity are best addressed by the Michigan Supreme Court or the Legislature.

The trial court's denial of Ajax's motion for summary judgment in Docket No. 51796 is reversed. The trial court's grant of Ajax's motion for summary judgment in Docket No. 53263 is affirmed.